KENNETH A. LILL, COMPUTER PRINTING CAPABILITIES, INC., A CORPORATION OF THE STATE OF NEW JERSEY; PARKER PRINTING COMPANY, INC., A CORPORATION OF THE STATE OF NEW JERSEY; AND PARKER PRINTING COMPANY, A JOINT VENTURE, PLAINTIFFS-RESPONDENTS, v. THE DIRECTOR, DIVISION OF ALCOHOLIC BEVERAGE CONTROL, DEPARTMENT OF LAW AND PUBLIC SAFETY, DEFENDANT, N. J. WINE AND SPIRIT WHOLESALERS ASSOCIATION; AND JERSEY PRINTING CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted May 18, 1976—Decided June 8, 1976.

Before Judges LYNCH, LARNER and HORN.

*Messrs. Pitney, Hardin & Kipp,* attorneys for defendant-appellant N. J. Wine and Spirit Wholesalers Association (*Mr. Thomas J. Spies,* on the brief).

*Messrs. Meltzer & Starr,* attorneys for defendant-appellant Jersey Printing Co., Inc. (*Mr. Ira M. Starr,* on the brief).

*Messrs. Shepard, Cooper, Dickson, Merkelbach & Camp,* attorneys for plaintiffs-respondents (*Mr. Donald W. Merkelbach,* on the brief).

The opinion of the court was delivered by

LARNER, J. A. D. Plaintiffs brought this action in the Chancery Division to restrain the State Director of the Division of Alcoholic Beverage Control from awarding a contract to Jersey Printing Co., Inc. for the printing of price lists pursuant to the rules of the Division of Alcoholic Beverage Control. Primarily, plaintiffs sought a judgment declaring that the award of the contract for printing and distributing the price lists could only be awarded after public advertising and competitive bidding pursuant to *N. J. S. A.* 52:34–6 et *seq.* After a plenary trial the court below entered judgment in favor of plaintiffs, declaring that the contract at issue was subject to the public bidding statute. Defendants appeal, asserting that the nature of the contract and the factual background underlying its award dictate the conclusion that the state competitive bidding statute is not applicable.

In carrying out its statewide functions pursuant to the authority of *N. J. S. A.* 33:1-39.2 and 33:1-93, the Director of the Division of Alcoholic Beverage Control (ABC) promulgated rules pertaining to the printing, publication and distribution of wholesale and retail minimum price lists. *N. J. A. C.* 13:2–34.6; *N. J. A. C.* 13:2–31.2. These lists are published quarter-annually in accordance with requisite filings by licensees with the ABC. *N. J. A. C.* 13:2–31.1.

Payment of the printing and mailing costs of these price lists is accomplished by assessing the charges proportionately among those firms which participate in the filings. *N. J. A. C.* 12:2–34.6; 13:2–31.3. Each price list is pub-

lished in pamphlet form over the signature of the Director and the seal of the State of New Jersey and contains the legend, "Not printed at State Expense — cost paid by Filers."

In harmony with actual practice for many years the ABC does not select the printer, nor does it become a party to the contract. The selection is made by the representative organization of the more substantial filers known as N. J. Wine and Spirit Wholesalers Association (Association) which becomes the contracting party. For the past 25 years the Association by appropriate resolution, upon consideration of contract proposals, has seen fit to award the contract to Jersey Printing Co., Inc. (Jersey). There was testimony that although the ABC does not participate in the selection of the printer, it prescribed the standards and specifications for the work undertaken by the firm.

The Director receives the invoice from the printer and then proceeds to allocate the cost among the filers in proportion to the number of items contained in each filing. Notification of this allocation is then given to the filers who then remit directly to the printer. Failure to make payment may result in the imposition of sanctions by the Director. Since 1970 ABC has added a 15% surcharge to the printing bill, also allocated among the filers, in order to defray the expense of its office in processing the price filings.

The statutory provision which establishes the public bidding requirements for state purchases and contracts states:

All purchases, contracts or agreements, the cost or contract price whereof is to be paid with or out of State funds shall, except as otherwise provided in this act, be made or awarded only after public advertisement for bids therefor, in the manner provided in this act. [*N. J. S. A.* 52:34–6]

Since none of the exceptions in other sections of the act are relevant to the issue under consideration, the legal question must be answered within the ambit of the meaning

and intent of this legislative provision and the precedents dealing with public bidding requirements.

A literal construction of the controlling legislation points to the conclusion that it does not apply to the transaction herein. The printing contract, though a result of the requirements of ABC regulations, is not "paid with or out of State funds." See *Kingston Bituminous, etc. v. N. J. Turnpike Auth.,* 80 *N. J. Super.* 25 (App. Div. 1963).

However, the trial judge and respondents emphasize that the procedural method utilized to accomplish the work required by the state agency should not be permitted to undercut the salutary legislative and judicial policy favoring competitive bidding in the sphere of public contracts in order to "guard against favoritism, improvidence, extravagance and corruption." See *Hillside Tp. v. Sternin,* 25 *N. J.* 317, 322 (1957).

In harmony with the rigid policy to construe public bidding statutes and their application with sole reference to the public good, our courts have not hesitated to interpret the legislative intent in a manner to broaden rather than limit the scope of analogous legislation applicable to municipalities and counties. This policy is exemplified in the following cases upon which the trial judge relied in arriving at his conclusion: *McKim v. South Orange,* 133 *N. J. L.* 470 (Sup. Ct. 1945); *Kurman v. Newark,* 124 *N. J. Super.* 89 (App. Div. 1973); *Schnell v. Millburn Tp.,* 127 *N. J. Super.* 155 (App. Div.), aff'd 66 *N. J.* 137 (1974); *Pied Piper Ice Cream v. Essex Cty. Park Comm'n,* 132 *N. J. Super.* 480 (App. Div. 1975).

In *McKim* the municipality provided an ordinance for its garbage collection through the issuance of an exclusive license to one scavenger who was permitted to collect fees from householders based on a scale fixed by resolution of the governing body. The court set aside the ordinance as violative of the policy requiring public advertising for public work and a contract award to the lowest responsible bidder. "The evils attendant upon an award without open bidding

are not less under license than under direct contract" (*Mc-Kim, supra,* 133 *N. J. L.* at 474) and the splitting of the cost among the users of the service cannot avoid the dictates of the bidding statute which would apply to the total cost in the municipality.[1]

*Kurman, supra,* involved the validity of a towing contract awarded by the City of Newark to Dewey's Garage without competitive bidding. It related to the removal and storage of abandoned and stolen motor vehicles. The successful contractor was permitted to make a charge authorized by the municipality to be paid by those who reclaimed their vehicles. In the case of unclaimed vehicles, the contractor auctioned them off. If the sale produced less than the contractor's bill, the contractor agreed to accept the amount in full satisfaction. If the amount realized was in excess of the bill, the contractor deducted the amount due him and remitted the balance to the city. On the basis of the rationale of *McKim* and *Hillside Tp. v. Sternin, supra,* the Appellate Division set aside the contract, concluding that the contractual arrangement violated the salutary policy of the public bidding statute. *N. J. S. A.* 40A:11-4.

In *Schnell, supra,* the municipality by resolution granted to Wells Fargo Signal Systems the privilege to install an alarm panel at police headquarters which was for the purpose of alerting the police to unlawful entry into homes wherein the company had installed burglar alarm systems. This was proposed without cost to the municipality and on a stipulated charge to subscribers. The township considered competitive bidding unnecessary and so advised two competitors who sought the same privilege. The court con-

---

[1]See *Marangi v. Ridgewood,* 33 *N. J. Super.* 294 (App. Div. 1954), where this court sustained an exclusive licensing ordinance and the award of such a license where the rates to be charged were submitted competitively through advertising and public bidding, and the license was awarded to the lowest responsible bidder. We held that such a procedure corrected the objectionable features of the *McKim* ordinance.

cluded that the arrangement was invalid because of lack of competitive bidding. The mere fact that the cost is passed on to the members of the public and not paid from the municipal treasury was held not to detract from the need to guard against favoritism and corruption through competitive bidding.

In *Pied Piper, supra,* the Essex County Park Commission, without competitive bidding, awarded to Good Humor Corporation the exclusive right to sell ice cream products in the county park system. In consideration for this privilege Good Humor agreed to pay to the Commission 12½% of gross sales. A competitor, Pied Piper Ice Cream, Inc., offered to pay 16% for the exclusive privilege. Nevertheless, the Commission determined that Good Humor "would best serve the needs of the Commission and the public" and accordingly awarded a three-year contract to that company. The trial court sustained the validity of the contract on the basis that the service rendered was not a mandatory service of the public body and that there was no expenditure of "public funds" under *N. J. S. A.* 40A:11–1. The Appellate Division reversed, holding that the Commission was a "contracting unit" under the definition of the bidding statute and that the purpose of the policy underlying the statute was frustrated by failure to utilize competitive bidding, whether the service to the public was mandatory or discretionary from the viewpoint of the public body.

■ We thoroughly agree with the important public policy underlying the statutory requirement of competitive bidding through advertising and the reasonable extension of the literal terms of such legislation to accomplish that purpose and bring within the legislative ambit as many public contracts or arrangements as may be reasonably appropriate. Such is the rationale applied in the foregoing cases dictated by the factual complex in each of them.

■ However, a study and analysis of the development of our law through the cited cases reveal the presence of common denominators which are nonexistent in the position and

participation of the State department in our case. In each of the cited opinions the governmental unit exercised control over either the selection of the contractor or the determination of the consideration flowing to or from the contractor or a combination of both. It therefore is rational and appropriate to insist upon compliance with the public bidding statutes to guard against the potential of the evil of favoritism and corruption. Patently, where public officials have the determinative voice in the selection of an exclusive contractor and/or the price which he is to charge, there exists the milieu for favoritism and corruption whether the consideration is paid by the governmental entity or the members of the public who are part of that entity. In such a setting the insistence upon competitive bidding is wholly in accord with the purpose and philosophy underlying the rigid legislative requirements.

In contrast thereto, the factual complex relating to the printing of the price lists herein does not present the potential for favoritism and corruption involving the governmental unit or its employees. We are rather concerned with a private contract between the representative association of liquor dealers and the printing firm in which neither the ABC, nor its Director or subalterns, have any power or control over the designation of the printer or the amount to be paid for its services. Where the public officials are in this neutral position with respect to the decision-making function, the potential of public corruption or favoritism does not appear as a specter to guard against. The incidental participation of the ABC in the preparation of specifications for the work, or insistence upon compliance with those specifications, or the promulgation of rules relating to the apportionment of the cost, do not propel the Division or its employees into the making of the key decisions which would require the need for the prophylaxis of competitive bidding.

Furthermore, since the arrangement between the Association and Jersey does not involve public funds directly from

the State Treasury or indirectly from pockets of the general public, the discretionary judgment involved in the selection of the printer and the determination of the contract price. is purely a private matter beyond the concern of the State or its citizens. Under such a set of circumstances the policy considerations underlying competitive bidding requirements are not relevant.[2]

The result which we reach herein is in accord with the contemporaneous and practical construction of the statute in question by the ABC for more than 25 years. Although not controlling in itself, the continuous construction of the statute by the enforcement agency during such a long period of time without interference by legislative amendment may be given substantial weight as corroborative evidence of its conformity with the legislative intent. *Margate Civic Ass'n v. Margate Bd. of Comm'rs.*, 132 *N. J. Super.* 58, 64 (App. Div.), certif. den. 68 *N. J.* 139 (1975); *Gann Law Books v. Ferber*, 3 *N. J. Super.* 236, 241 (App. Div. 1949); *Young v. Civil Service Comm'n*, 127 *N. J. L.* 329, 332 (Sup. Ct. 1941).

In view of the foregoing the judgment entered below is reversed and the matter is remanded for the entry of judgment in accord with this opinion.

---

2It might also be argued that the provisions of *N. J. S. A.* 52:34–6 limiting the applicability of competitive bidding of contracts to be paid with or out of *state funds* makes inapposite the analogy of cases arising out of municipal or county transactions, where the statutes make reference to the more generic term *public funds*. See *Kingston Bituminous, supra*, 80 *N. J. Super.* at 32.