149 N.J. Super. 448 (1977)
374 A.2d 43
LAWRENCE SCHEFF AND WALTER SCHEFF, PARTNERS, AND COUNTRY GAS SERVICE. INC., A NEW JERSEY CORPORATION, PLAINTIFFS-APPELLANTS.
v.
TOWNSHIP OF MAPLE SHADE, IN THE COUNTY OF BURLINGTON, A MUNICIPAL CORPORATION OF NEW JERSEY, MAYOR AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MAPLE SHADE, THE ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF MAPLE SHADE, AND JOSEPH GRIFFIN, AS ZONING OFFICER OF THE TOWNSHIP OF MAPLE SHADE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 1977.
Decided April 1, 1977.
*451 Before Judges BISCHOFF, MORGAN and KING.
Mr. Peter L. Masnik argued the cause for appellants (Messrs. Kalikman & Masnik, attorneys).
Mr. Jan M. Schlesinger argued the cause for respondent Township of Maple Shade (Messrs. Hartman, Schlesinger, Scholsser & Faxon, attorneys).
Mr. Robert E. Kingsbury appeared on behalf of Mr. Steven Warm, attorney for respondent Board of Adjustment.
PER CURIAM.
Plaintiffs, a corporation and its principals, engaged in the storing, selling and distribution of liquid propane gas (hereinafter LPG) appeal from the trial judge's affirmance of a denial of their application for a variance, pursuant to N.J.S.A. 40:55-39(d), to permit use of their land as a storage facility for LPG. Their announced intention was to erect four 30,000-gallon tanks for that purpose on the subject premises. The principal issue raised concerns the extent to which state approval of the site as safe for the purpose forecloses municipal disapproval thereof as being unsafe.
The subject premises, owned by plaintiffs, consist of approximately 11 acres of unimproved land in Maple Shade Township lying between Route 73 on the west and the Pennsauken Creek on the east. The tract is of an irregular shape, varying in depth from 450 to 600 feet, with the westerly 300 feet zoned Highway Commercial (HC) and the remainder zoned Residential (RA). The zoning ordinance does not permit storage of LPG anywhere in the township.
Approximately 80% of the tract is officially mapped as wetlands by the State Department of Environmental Protection. No buildings, commercial or residential, are permitted, even if feasible, on the portions so mapped since they would interfere with the flow of water. The LPG *452 storage tanks would be permitted only because they are to be placed on pilings and, standing four to five feet from the surface of the ground, would not interfere with the water's ebb and flow. Reference to an aerial photograph of the site confirms its classification as wetlands; the larger portion of the parcel resembles marshland, is obviously subject to periodic flooding and is clearly unsuitable to any kind of permanent structure. The evidence before the board of adjustment clearly establishes this fact.
A portion of the land was previously used as a dump. In its initial application for the variance plaintiff proposed to place their tanks on the filled portion thereof consisting largely of debris which accumulated from years of dumping.
Following a hearing during which it was disclosed that eight years before the application a subsurface debris fire had burned and smoldered for over eight weeks, and that locating the tanks on such fill would pose hazards to the neighborhood, plaintiffs in their second application changed the proposed location of the tanks on the land so that they would sit on virgin soil and at a distance from the site of the previous debris fire. The evidence at the second hearing was uncontradicted that the tanks would, in fact, stand on virgin soil. The uses immediately adjacent to the subject 11-acre tract include an automobile junk yard, a used truck dealership and an automobile body shop.
Despite the zoning ordinance, plaintiffs presently operate their business, as a nonconforming use, in Maple Shade Township on a one-acre tract of land located on Route 38 within 600 feet of its junction with State Highway Routes 73 and 41. That tract presently hosts a storage capacity of 7500 gallons of LPG and is immediately adjacent to a large Howard Johnson Motel, a restaurant and other commercial establishments. The application under consideration was motivated by a perceived need to enlarge storage capacity so as to permit stockpiling LPG during the slack periods of demand in the summer months to meet customer need (about 2500 of them) during the winter months. Plaintiffs *453 advised the board of industry-wide experience with shortages of LPG during those periods of imperative need and sought to cope with that problem by enlarging their ability to accumulate reserves to avoid such shortages.
The township fire chief testified that, in his opinion, the proposed location for the tanks was a safe one. In fact, he took the view that the new location was safer than the one from which plaintiffs had been operating for years. "I'd like to see it get out of where it's at. I'd like to see it move." This view was prompted by the proximity of plaintiffs' present site to the sizeable Howard Johnson Motel, a taproom, clothing store and similar other business establishments.
Sergeant Clifford Melder, a New Jersey State Police officer assigned to oversee the safety of LPG loading and transportation, testified that the proposed site is safe for those activities and superior to that of plaintiffs' present location. According to him, fires at LPG storage facilities are extremely rare.
Plaintiffs' consulting engineer, Robert D. Hubbard, testified that the land in question, except for a small portion thereof, was unsuitable for any kind of permanent structure. He confirmed approval of the site for safety by the Department of Labor and Industry and approval by the Department of Transportation with respect to the means of access. He testified that before the Department of Labor and Industry issued its approval as to the safety of the proposed site, one of its inspectors, a professional engineer, visited the premises, inspected it, discussed the matter with him and requested test borings. In addition thereto, request was made for "foundation calculations, calculations for the tank support. They want to see the specifications on such things as driving the pilings, specifications on the material, specifications on all the piping, electrical and other mechanical services, as well as fire protection as far as where fire extinguishers are located on the site."
*454 The only evidence adduced in opposition to the application came from neighboring property owners who voiced their concern as to the hazard posed by the proposed facility, particularly in light of the debris fire which had occurred some eight years before. None of them produced testimony of an expert nature or brought to the attention of the board facts which had not already been referred to by others.
At the conclusion of the hearing the board announced its decision to reject the application and stated, "we will reserve the right of giving any reasons for our decision until we have the benefit of the transcript."
The resolution denying the variance contained the board's reasons for denial of the variance. They included the following:
5. The available water supply in the area in the event of a fire or explosion relating to the proposed use is from a creek which borders the property, and one fire hydrant, both of which are considered inadequate and undependable in the event of an emergency.
6. The proposed use would create a hazardous situation with respect to the surrounding area by reason of the danger of fire or explosion and would potentially create a condition which would threaten the public health and safety and would be detrimental to the proper use of the surrounding area.
7. Applicant has demonstrated no special reason why this Use Variance should be favorably recommended which would outweigh the inherent danger of the proposed use to the immediate residential surroundings.
The trial judge considered the township's concerns legitimate and the evidence in support thereof sufficient to require affirmance. It was not persuaded that State approval of the site as to safety for the proposed facility foreclosed a contrary municipal finding. This appeal ensued.
Although evidence in support of the board's findings was hardly overwhelming, there was in light of the presumptive validity attending municipal action and the limited scope of appeal enjoyed by the trial judge and this one, marginally enough to sustain the action. We are, therefore, *455 impelled to consider the central issue posed in this appeal: the extent to which state approval as to the safety of the site foreclosed the contrary finding by the township and the action taken by the township in reliance thereon. Although the issue is phrased in plaintiffs' brief in terms of preemption, we do not reach the issue since we conclude that the township's finding that the location for the LPG storage facility was unsafe, and the resulting denial of the variance on that ground, was in direct conflict with state law and action taken pursuant thereto and hence can have no validity.
State approval of plaintiffs' proposed site was given by the Commissioner of Labor and Industry pursuant to the delegation of power to make such determination in N.J.S.A. 21:1B-2(b). That section empowers the Commissioner in the following terms:
The Commissioner of Labor and Industry shall make, promulgate and enforce regulations setting forth minimum standards covering the design, construction, location, installation and operation of equipment for storing, handling or utilizing liquefied petroleum gases at public utility establishments operated by public utilities as defined in section 48:2-13 of the Revised Statutes and at marine terminals, pipeline terminals, refineries and manufacturing establishments, which shall not be deemed to include bulk plants, and specifying the odorization of said gases and the degree thereof prior to sale by the manufacturer.
A detailed set of regulations, many pertaining directly to the safe location of LPG storage facilities, was adopted pursuant to this statutory authority. See N.J.A.C. 12:200-3.4, 12:200-5.8.5, 12:200-5.8.7, 12:200-5.8.9. Hence, there is no question but that the Commissioner was empowered to consider the safety of an LPG facility, and did so under the regulations adopted by his agency evidenced by the approval given plaintiff.
Clearly, the township disagreed with the Commissioner's determination that the site was a safe one because the variance was denied on the ground that its location posed *456 a hazard to those in its immediate vicinity. It has not, however, challenged the validity of this determination, and that matter is not before us. We have concluded that the Commissioner's approval foreclosed township disapproval because the two findings are repugnant. "[A]n ordinance will fall if it permits what a statute expressly forbids or forbids what a statute expressly authorizes." Summer v. Teaneck, 53 N.J. 548, 554 (1969). In any conflict between an ordinance and a statute, the latter must prevail. 5 McQuillin, Municipal Corporations (3 ed. 1969), § 15.20 at 81. Moreover, N.J.S.A. 21:1B-7 itself expressly provides:
No municipality or other political subdivision shall adopt or enforce any ordinance or regulation in conflict with the provisions of this act or with the regulations promulgated under section two of this act.
By this enactment, the Legislature invested the State with supremacy with respect to the matters concerning LPG committed to the jurisdiction of the Commissioner of Labor and Industry, and municipal action with respect to purely local concerns cannot be permitted to nullify the effect of action taken by the Commissioner pursuant to its terms. Indeed, in 1953, only two years after enactment of N.J.S.A. 21:1B-1 et seq., the Attorney General, in a formal opinion interpreting that legislation with respect to its effect on municipal power to legislate in the area, declared that the statute
was enacted to establish a uniform scheme of regulation of the liquified petroleum gas industry throughout the state, and thus the promulgation of a regulation thereunder precludes more stringent municipal regulation of the same matter, since an ordinance is deemed to be in conflict with a state law or regulation when it prohibits acts permitted by the state. [Op. Atty. Gen., July 1, 1953, No. 27]
The absence of any amendment to N.J.S.A. 21:1B-1 et seq. following rendition of this formal opinion strongly *457 suggests that the views expressed therein were consistent with legislative intent. Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291, 300 (1968); Lemke v. Bailey, 41 N.J. 295, 301 (1963); Egan v. Erie R. Co., 29 N.J. 243, 250 (1959); Barringer v. Miele, 6 N.J. 139, 144 (1951); Lill v. Director, Div. of Alcoholic Bev. Control, 142 N.J. Super. 242, 250 (App. Div. 1976); Closter Service Stations, Inc. v. Ridgefield Park Board of Com'rs, 99 N.J. Super. 69, 75 (App. Div. 1968). The fact that the township's action was taken pursuant to general provisions of its zoning ordinance, rather than by ordinance adopted under its police power specifically pertaining to public safety, makes no difference. Calling municipal action "zoning" cannot create municipal power to act in a way otherwise foreclosed to it by conflicting state legislation or action taken pursuant thereto. In re Public Service Elec. and Gas Co., 35 N.J. 358, 374-75 (1961).
Adequate storage for LPG cannot be regarded as a matter of purely local concern. N.J.S.A. 21:1B-8 evidences the Legislature's view that statewide regulation of LPG storage and transportation "is necessary for the immediate preservation of the public peace, health and safety." The legitimacy of this view is confirmed by the events of this recent harsh winter of 1977, which we judicially notice, when schools were closed and thousands thrown out of work by natural gas shortages, primarily in the South Jersey area. Most of plaintiffs' customers do not reside in Maple Shade and have no voice in the actions of that township as they may affect availability of fuel for the next winter. Although the township's concern for the possible hazard attendant to the storage of LPG is understandable, its actions based thereon cannot be implemented when based solely upon a finding in direct conflict to determinations made pursuant to state law.
The determination that special reasons for the subsection (d) variance did not exist was based exclusively on the finding that the proposed location for the proposed facility was not a safe one. In the absence of that determination, *458 which we have held the township could not make, the only possible conclusion is, in our view, that special reasons have been shown to exist. The evidence clearly establishes that all but a small portion of plaintiffs' land is unsuitable for permanent buildings, commercial or residential, of any kind. Approximately 80% of the land is classified as wetlands, is marshy and subject to periodic flooding. No permanent building interfering with the flow of water can legally be permitted on this portion of the property. The surrounding uses, including an automobile junk yard, used truck dealership and an auto body shop, as well as the unfavorable topography of the land, obviously render the parcel unsuitable for residential development, one of the uses for which part of the land is zoned. The record clearly supports plaintiffs' contention that no other use of the land is economically feasible and that the proposed use, for LPG storage, is the one for which the land is "peculiarly fitted." Kohl v. Fair Lawn Mayor and Council, 50 N.J. 268, 279 (1967).
Although the zoning board of adjustment, in its resolution denying the variance, stated, in conclusionary terms, that the negative criteria have not been met, the record before it is void of evidence supporting that conclusion. As we have already stated, the nature of the land precludes its development in accordance with the uses permitted under the zoning ordinance. The proposed use is peculiarly fitted to the particular location. Nothing suggests that the zoning plan will be impaired by the existence of the LPG storage facility at the site in question.
We have therefore concluded that on the record before the zoning board of adjustment, the trial court and now this court, denial of the variance was without adequate evidential support and hence arbitrary and capricious. Fully cognizant of the presumptive validity accorded municipal action, we reverse and remand with directions that the requested variance be granted and a building permit issued.