725 A.2d 64 (1999)
319 N.J. Super. 200
FUNERAL HOME MANAGEMENT, INC., t/a Volk-Leber Funeral Homes, and Volk Funeral Homes Corp., Plaintiffs-Respondents/Cross-Appellants,
v.
William BASRALIAN, Defendant-Appellant, and
Zoning Board of Adjustment of the Borough of Oradell, Defendant.
Funeral Home Management, Inc., t/a Volk-Leber Funeral Homes, and Volk Funeral Homes Corp., Plaintiffs-Respondents/Cross-Appellants,
v.
William Basralian, Defendant, and
Zoning Board of Adjustment of the Borough of Oradell, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 18, 1999.
Decided March 10, 1999.
*65 Joseph L. Basralian, Hackensack, for defendant-appellant William Basralian in A-1579-97T5 (Winne, Banta, Rizzi, Hetherington & Basralian, attorneys; Mr. Basralian, of counsel; Craig L. Levinsohn, on the brief).
Antimo A. Del Vecchio, Montvale, for defendant-appellant Zoning Board of Adjustment of the Borough of Oradell in A-1926-97T5 (Beattie Padovano, attorneys; John J. Lamb, of counsel and on the brief; Mr. Del Vecchio, on the brief).
Kenneth E. Pringle, Belmar, for plaintiffs-respondents/cross appellants Funeral Home Management, Inc. and Volk Funeral Homes Corp. in both appeals (Pringle & Quinn, attorneys; Mr. Pringle, of counsel and on the brief).
Before Judges CONLEY, A.A. RODRIGUEZ and KIMMELMAN.
The opinion of the court was delivered by CONLEY, J.A.D.
These back-to-back appeals, which we consolidate for the purpose of a single opinion, arose from the trial court's reversal of a decision by the Zoning Board of Adjustment of the Borough of Oradell to grant a use variance pursuant to N.J.S.A. 40:55D-70(d). The variance would permit the applicant to operate a funeral home on property located partially in an office use zone and partially in a residential zone. Funeral homes are not a permitted use in any zone under the Oradell zoning ordinance. The special reason found by the Board was the peculiar suitability of *66 the use for the property. Upon challenge by a taxpayer and nearby owner of a funeral home, the trial judge concluded that the Board's finding of special reasons, as well as its finding that the enhanced Medici[1] burden had been met, were arbitrary and not supported by the record. We affirm.

I.
The use variance at issue covers two separate lots, lots six and seven in Block 708, which combine to make a z-shaped piece of property covering approximately two acres. Lot six is rectangular in shape, covering .43 acres which lies at the southwest corner of the intersection of Kinderkamack and Soldier Hill Roads. Lot seven, which covers approximately one and one-half acres, adjoins lot six to the south and has its 100 foot long eastern border abutting Kinderkamack Road. It then extends 495 feet west, some 320 feet beyond the depth of lot six. The western portion of lot seven then turns south for approximately 280 feet, making the lot shaped like an "L" which, when viewed with lot six, completes the z-shape of the property.
In addition to its odd shape, the property also lies in two different zones under the Borough's zoning plan. Lot six lies entirely within the B-2 Business Zone, in which the only permitted use is general and professional office buildings. The border of the B-2 zone, however, cuts across lot seven in such a manner as to create an eastern portion of the lot, which is roughly the same size as lot six, that lies within the B-2 zone. The remaining portion of lot seven lies within the R-2 Residential Zone, which is zoned for residential dwellings. Thus, the portion of lot seven which is zoned for residential use is effectively land-locked as the only access to it is through the portion zoned for business use.
Located on lot seven is an existing two and one-half story residence. It is approximately 125 feet from Kinderkamack Road. The planned development of the site calls for moving the dwelling to the front setback line, which would place it 35 feet from Kinderkamack Road, and constructing a 38 foot by 50 foot addition, converting the structure to a combination funeral home and residence. Proposed access to the property would be from both Soldier Hill Road and Kinderkamack Road. The application also included 56 parking spaces for the funeral home, 24 of which would be located within the R-2 zoned portion of lot seven.[2]
The properties immediately surrounding lots six and seven reflect the boundary between the business and residential zones. On the east side of Kinderkamack Road are several fully developed commercial office uses consistent with the B-2 zone, as well as some preexisting nonconforming commercial uses such as a two story nursing facility. Directly to the south of lot seven is lot eight which is developed with a two story office center. Two more small office buildings are located to the south of lot eight, on lots nine and ten respectively, which both abut Kinderkamack Road. On the other hand, to the west of lot six and the north of lot seven, in the R-2 and R-1 zones, are several lots that abut Soldier Hill Road with single family dwellings. Residential dwellings also exist on lots to the west and to the south of lot seven. Located to the south of lot seven and lot eight, for instance, there is a cul-de-sac type grouping of several single family dwellings whose access road, Ellen Place, comes off of Kinderkamack Road and runs between lots nine and ten.
The applicant presented several expert witnesses to establish the necessary positive and negative criteria for his use variance. Critical to our consideration of the issues before us is the evidence from Michael Kauker, a licensed professional planner, who provided the basis for the Board's finding of a special reason for the use variance. In his testimony, Kauker expressed the view that the zoning of the property was unusual in *67 relation to the development of the surrounding properties. He posited that the area of the property zoned for a business use was relatively small in comparison to the surrounding properties in the B-2 zone and, thus, an owner of the subject property was at a competitive disadvantage in terms of the size of a permitted office use that could be constructed.
The planner offered several "special reasons" as to why the property was particularly suited to the funeral use. He felt that the property's size, configuration and location made it well suited for a transitional type use, which he thought the funeral home was. He felt there were zoning difficulties in building a permitted office use on the property that could compete with the surrounding office uses. And he asserted that, given its corner location, its position in the northern portion of the B-2 zone, and the fact that it is on the perimeter of that zone, the property was not well suited for an office building, which is a much more intensive use than a funeral home. He thought the community needed another funeral home although he gave no factual basis for this, except the applicant's projection of handling 37 to 50 funerals a year. The planner concluded that "the general welfare would certainly be positively served by both the location of the use in this area on this particular piece of property and also in terms of community service."
The application was opposed by plaintiff. It operates a preexisting nonconforming funeral home located on Kinderkamack Road, less than one mile from the property. Its owner, Dan Leber, asserted that there was no need for another funeral home in the area, pointing out that, in addition to his funeral home, there were presently three others within three miles of Oradell. He also expressed concern over an increased impact on traffic.
In its resolution granting the use variance, the Board concluded that the proposed use was not an inherently beneficial use per se. But it also concluded that special reasons nonetheless existed as the use was peculiarly suited for the property. It considered the irregular shape of the property and the fact that it lies in two different zones. Despite the fact that lot seven presently is used for residential purposes, the Board thought the site was not suited for residential use, but did recognize that the applicant could build an 8,000 square foot office building on it. However, the Board thought that would be too intensive a use and that ideally the site should be a "buffer" or transition area. The funeral use would serve this purpose and be acceptably less intensive and more aesthetically pleasing.
As to the Medici enhanced proof requirement, the Board concluded that although the zoning ordinance did not permit funeral homes anywhere in the Borough (perhaps reflecting a determination that plaintiff's preexisting funeral home was sufficient), it observed that they were not expressly prohibited, thus concluding that the Borough had not intended to prohibit such use. It also expressed the thought that funeral home use would not be a widespread use in any single municipality and concluded "[t]he enhanced burden reconciling the failure of the governing body to provide for a funeral home in any zone is therefore established."

II.
The New Jersey Municipal Land Use Law, N.J.S.A. 40:55D-1 to -112, authorizes local zoning boards to grant a use variance, pursuant to N.J.S.A. 40:55D-70(d), where: (1) special reasons exist for the variance (the positive criteria); and (2) the variance can be granted without substantial detriment to the public good and will not substantially impair the intent and purposes of the zone plan and zoning ordinance (the negative criteria). See Elco v. R.C. Maxwell Co., 292 N.J.Super. 118, 127, 678 A.2d 323 (App.Div.1996).
We have recently observed that on the one hand "[a] use variance `is an official quasi-legislative, quasi-judicial determination that the use ... allowed is not offensive to the [zoning] ordinance in the broad context of the particular circumstances....' [So that] [a] zoning board's power to grant a variance `is intended to accommodate individual situations which, for a statutorily-stated reason, require relief from restrictions otherwise uniformly applicable to the zone as a whole.'" *68 Stop & Shop v. Board of Adjustment, 315 N.J.Super. 427, 434, 718 A.2d 1218 (App.Div.1998) (citations omitted). On the other hand, the reasonableness of zoning regulations must be presumed, Moriarty v. Pozner, 21 N.J. 199, 210, 121 A.2d 527 (1956), and only exceptional cases warrant use variances since there exists a "strong legislative policy favoring land use planning by ordinance rather than by variance." Elco v. R.C. Maxwell Co., supra, 292 N.J.Super. at 126, 678 A.2d 323. And see Medici v. BPR Co., supra, 107 N.J. at 21-23, 526 A.2d 109; Kohl v. Mayor and Council of Fair Lawn, 50 N.J. 268, 275, 234 A.2d 385 (1967) (use variances should be granted "sparingly and with great caution since they tend to impair sound zoning.")
More generally, of course, we, as should the trial judge, give deference to a local zoning board. E.g. Smart SMR, Inc. v. Fair Lawn, 152 N.J. 309, 327, 704 A.2d 1271 (1998); Kramer v. Board of Adjustment, Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965). Greater deference, however, ordinarily is given to a denial of a variance than to a grant. Nynex Mobile Comm. Co. v. Hazlet Tp., 276 N.J.Super. 598, 609, 648 A.2d 724 (App.Div. 1994).
All that being said, this is not an easy case to resolve. On the one hand, the applicant has provided witnesses who have given what sounds like plausible expert evidence establishing both the special reasons and, at least, the non Medici negative criteria. Ostensibly, it seems, then, that this might simply be a choice of the experts, one that must remain with the Board unless clearly without basis. But, on the other hand, when looked at more carefully, the expert's and, thus, the Board's, special reasons analysis is questionable.
At the outset, although the applicant seems to now assert a claim of undue hardship, that was not the contention before the Board. Moreover, the Board found that the portion of the property in the B-2 zone could be developed with an 8,000 square foot office building as a permitted use, albeit perhaps not its best economic use. And, though the Board thought that the residential portion of the property could not be used for residential purposes, the fact is, that is its current use.
As we have said, the Board concluded that the use is " `peculiarly fitted to the particular location for which the variance is sought.'" Burbridge v. Mine Hill Twp., 117 N.J. 376, 386, 568 A.2d 527 (1990) (quoting Kohl v. Mayor and Council of Fair Lawn, supra, 50 N.J. at 279-80, 234 A.2d 385); see also Medici, supra, 107 N.J. at 4, 526 A.2d 109. In Medici, supra, 107 N.J. 1, 526 A.2d 109, the Supreme Court considered this category of special reasons. There the zoning board had granted a use variance for a four story motel with a restaurant on property zoned for industrial use. The property was U-shaped and was located at an intersection in South Plainfield near Route 287 and was surrounded by commercial type uses. Id. at 5-6, 526 A.2d 109. The trial court set aside the grant, but we reversed, finding that the zoning board did not arbitrarily conclude that the site was particularly suitable for use as a motel, based on the site's shape and its proximity to highways and commercial development. Id. at 8-9, 526 A.2d 109. The Supreme Court disagreed, observing that "[t]he fact that the site is near an interstate highway does not distinguish it from any other property in the vicinity of the highway." Id.at 24, 526 A.2d 109; see also Vidal v. Lisanti Foods, Inc., 292 N.J.Super. 555, 565, 679 A.2d 206 (App.Div.1996).
Medici makes clear that although property may be thought to be particularly suitable for a proposed use because the use fits well with the surrounding area (such as the Board's "buffer" or transition notion here), that does not equate to special reasons. In Fobe Assoc. v. Mayor of Demarest, 74 N.J. 519, 379 A.2d 31 (1977), for instance, although upholding the local board's denial of a use variance for multi-family housing on other grounds, the Court discussed the peculiar suitability special reasons concept, framing the question as whether "the public welfare benefit [served by the use] is peculiarly dependent upon the location of the site for the variance." Id. at 527, 379 A.2d 31 (citing Kohl v. Mayor and Council of Fair Lawn, supra, 50 N.J. at 279-80, 234 A.2d 385). In concluding that the record contained no proof that "unless the plaintiff's project is erected at the particular site ... the general welfare inherent in provision of more multi-family *69 housing will not be attained," id. at 534-35, 379 A.2d 31, the Court quoted with approval the holding in Mocco v. Job, 56 N.J.Super. 468, 477, 153 A.2d 723 (App.Div.1959), that for a peculiar suitability special reason " `the particular site ... must be the location for the variance,'" id. at 534, 379 A.2d 31 (emphasis is supplied in Fobe).
Likewise, in Pagano v. Zoning Bd. of Adjustment, 257 N.J.Super. 382, 608 A.2d 469 (Law Div.1992), the applicants sought a use variance to operate a pistol range on a portion of the subject property and to operate retail sales of hunting and fishing supplies on another portion, neither use being permitted under the applicable zoning ordinance. Id. at 385, 608 A.2d 469. Although the court remanded the matter due to the board's failure to provide sufficient findings of fact, it noted that:
[T]he record is devoid of any proof demonstrating that the general welfare was advanced due to the location of the pistol range at that site. Even though the general welfare may admittedly be advanced by the proposed use, absent proof that the general welfare would not similarly be advanced by locating the pistol range at other locations, or proof that no other suitable sites exist, the applicants could not be said to have satisfied their burden of establishing the particular suitability of the [subject property] for the proposed use.... At best, the site was a "convenient" location for ... residents and was sufficiently distant from residential or other developed areas so as to diminish the likelihood of danger or noises attributable to the use.

[Id. at 392, 608 A.2d 469.]
See also Pierce Estates Corp. v. Bridgewater Twp., 303 N.J.Super. 507, 517, 697 A.2d 195 (App.Div.1997); Degnan v. Monetti, 210 N.J.Super. 174, 183, 509 A.2d 277 (App.Div. 1986); Shields v. Board of Adj. of Twp. of Mansfield, 133 N.J.Super. 418, 421-22, 337 A.2d 54 (App.Div.1975).
On the other hand, we have found peculiar suitability special reasons exist where, generally, the use is one that would fill a need in the general community, where there is no other viable location, and where the property itself is particularly well fitted for the use either in terms of its location, topography or shape. In Anfuso v. Seeley, 243 N.J.Super. 349, 579 A.2d 817 (App.Div.1990), for example, we affirmed the grant of a use variance to expand a small marina located in a residential zone on the Shrewsberry River where the location of the property on the waterfront was particularly suited for the use and the use served the State policy of encouraging recreational use of waterfront properties for the benefit of the public. Id. at 371-72, 579 A.2d 817.
Similarly, in Scheff v. Township of Maple Shade, 149 N.J.Super. 448, 374 A.2d 43 (App. Div.), certif. denied, 75 N.J. 13, 379 A.2d 244 (1977), in reversing the denial of a variance to use property as a storage facility for liquid gas, we found that the applicant had demonstrated the property was peculiarly suited for the proposed use, observing:
The evidence clearly establishes that all but a small portion of plaintiff's land is unsuitable for permanent buildings, commercial or residential, of any kind. Approximately 80% of the land is classified as wetlands, is marshy and subject to periodic flooding. No permanent building interfering with the flow of water can legally be permitted on this portion of the property. The surrounding uses, including an automobile junk yard, used truck dealership and an auto body shop, as well as the unfavorable topography of the land, obviously render the parcel unsuitable for residential development, one of the uses for which part of the land is zoned. The record clearly supports plaintiffs' contention that no other use of the land is economically feasible and that the proposed use, for [liquid propane gas] storage, is the one for which the land is "peculiarly fitted."

[Id. at 458, 374 A.2d 43.]
In Yahnel v. Board of Adjustment of Jamesburg, 79 N.J.Super. 509, 192 A.2d 177 (App.Div.), certif. denied, 41 N.J. 116, 195 A.2d 15 (1963), a telephone company was granted a use variance to construct a one story building to house dial telephone service on a lot that was zoned for residential use. Id. at 511, 192 A.2d 177. We upheld the municipality's finding that the use was peculiarly suited to the property, noting that *70 there was ample evidence to show that the proposed use was for dial telephone service for the Jamesburg and nearby areas, the proposed location was "in a wire center of limited area suitable for such a project," and that no other entirely suitable vacant land was available within the wire center for the proposed use. Id. at 518, 192 A.2d 177.
And more broadly, in Smart SMR, Inc. v. Fair Lawn, supra, 152 N.J. at 332, 704 A.2d 1271, the Supreme Court found a peculiar suitability special reason basis for a proposed telecommunications facility, noting that the use serves the general welfare, that the federal Telecommunications Act mandates that local regulation must not prohibit the provision of personal wireless services, and that "the site is zoned for industrial use, is centrally located within Smart's ESMR system, and already accommodates the existing 90-foot NYNEX monopole."
In contrast to these cases, here the Board made no finding that a funeral home use was not available in other locations in the area or, indeed, that there was a community need for such use. Rather, its resolution posits three reasons for the conclusion that the proposed use was particularly suited to the property: (1) the proposed use would act as a buffer between the intense office uses of the B-2 zone and the residences in the R-2 zone; (2) the proposed use would impose less burdensome traffic problems than a permitted office use; and (3) the size, topography and location of the lot make it unsuitable for residential use or a competitive permitted office use.
As to (2), pursuant to N.J.S.A. 40:55D-2 a recognized special reason for a variance has been the promotion of safety where the grant of a variance would tend to eliminate or reduce dangerous traffic conditions and alleviate parking congestion. See O'Donnell v. Koch, supra, 197 N.J.Super. at 141, 484 A.2d 334. Here, the proposed use will not eliminate or alleviate existing traffic patterns; indeed, obviously it will add to the traffic in the area, albeit perhaps less so than a permitted use, at least as to the B-2 portion of the lot.
As to (3), while the topography of lot seven may be somewhat difficult to incorporate in a residential use since it has a steep slope increasing from east to west some 70 feet and while the lot is oddly shaped, a funeral home is no more or less easily placed on the property than, for instance, the existing residence. The topography and shape, in other words, are not any more peculiarly well suited to a funeral home than to a permitted use.
As we see it, the primary basis for the Board's finding of special reasons was its view that the site with a funeral home on it would be a buffer or transition between the two zones. A similar argument was rejected by the Supreme Court in Cerdel Constr. Co., Inc. v. East Hanover Twp., 86 N.J. 303, 306-307, 430 A.2d 925 (1981). The Court there said:
It can always be said that the border area of a zone is affected by adjoining uses and that such an area is particularly adaptable to uses pursuant to a variance. However, the lines have to be drawn somewhere if a zone plan is to have any real purpose. The erosion of border areas through variances is destructive of sound zoning and cannot be allowed except where special circumstances beyond those ordinarily associated with zone borders are shown. Plaintiff's property can be put to its zoned use. It already has a dwelling on its northerly portion. Plaintiff's own expert witness testified ... that the subject property could feasibly be used for residential purposes. Moreover, the Board itself found that the property can be developed consonant with the existing zone plan. The proposal to construct a professional building with eight office suites and ... parking ... would undoubtedly return plaintiff a larger profit on its investment. This is not the test, however, by which a variance application should be measured.

[Ibid.]
See also Henningsen v. Township of Randolph, 214 N.J.Super. 82, 88, 518 A.2d 503 (App.Div.1986), rev'd on other grounds, 107 N.J. 1, 526 A.2d 109 (1987) ("[m]ultiple other uses ... would ... serve as a buffer to the nearby residences and not be aesthetically unsightly. Those factors do not qualify by themselves as a special reason ... entitling an applicant to a ... variance."). Cf. Burbridge, *71 supra, 117 N.J. at 392-93, 568 A.2d 527 (holding that, when addressing a use variance for a new nonconforming use, as opposed to the expansion of a preexisting nonconforming use, aesthetic considerations "have less relevance" and "ambience alone can seldom be a proper basis for special reasons").

III.
Because this was not presented as an inherently beneficial use, see Sica v. Board of Adjustment of the Twp. of Wall, 127 N.J. 152, 155, 603 A.2d 30 (1992),[3] the Board was required to determine whether the applicant had satisfied the Medici enhanced proof requirement relating to the impact on the zoning determination of the governing body.
In this respect, the Court in Medici, supra, 107 N.J. 1, 526 A.2d 109, said:
In the use-variance context, we believe [the legislative policies] can best be achieved by requiring, in addition to proof of special reasons, an enhanced quality of proof and clear and specific findings by the board of adjustment that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance. The applicant's proofs and the board's findings [in this regard] ... must reconcile the proposed use variance with the zoning ordinance's omission of the use from those permitted in the zoning district. For example, proof that the character of a community has changed substantially since the adoption of the master plan and zoning ordinance may demonstrate that a variance for a use omitted from the ordinance is not incompatible with the intent and purpose of the governing body when the ordinance was passed.

[Id. at 21, 526 A.2d 109.]
Characterizing this "enhanced proof" requirement as "formidable," id. at 25, 526 A.2d 109, the Court recognized the strong Legislative policy favoring proper land use planning through ordinance changes, not variances, as reflected by amendments to N.J.S.A. 40:55D-89 and -89.1 mandating periodic review of the master plan and ordinance. Id. at 20, 526 A.2d 109. These review requirements create a presumption that use restrictions persisting for lengthy periods of time are intentional. Id. at 20-21, 526 A.2d 109. As to the type of proof required to show a reconciliation of the proposed variance with the governing body's zone plan evidenced through its ordinance, the Court said:
It may be that the proposed use was one, like a health club, that was uncommon when the ordinance was last revised, but has since gained currency. Competent proofs to this effect could dispel the concern that exclusion of the use was deliberate rather than inadvertent. Likewise, a variance application to permit a commercial use to be established on residentially-zoned property might also be supported by proofs demonstrating substantial changes in the character of the neighborhood surrounding the subject property since the adoption of the ordinance, in order to reconcile the apparent conflict between the ordinance and the proposed variance. Similarly, the needs and character of an entire community may be altered by extrinsic factors, such as the proximity of major highway construction or commercial development in adjoining municipalities. Such circumstances may create a demand for uses, such as hotels, that were not anticipated when the ordinance was last revised. These examples are offered merely to illustrate, and not to exhaust, the nature of the proofs that could be offered to reconcile a proposed use variance with the provisions of the zoning ordinance.
[Id. at 21 n. 11, 526 A.2d 109 (emphasis added).]
The applicant here presented no evidence of the ordinance and any review thereof. We know that there are four funeral homes already in the area. We know that one of them, plaintiff's, preexisted the current ordinance. There is no evidence, then, that funeral home use was nonexistent or *72 uncommon at the time of the last required ordinance revision. Neither is there any evidence of substantial changes in the character of the surrounding neighborhood, or the alteration of the needs and character of the community that would reconcile the nonpermitted use with the present zoning ordinance.
Nonetheless, the Board concluded Medici had been met. But it did so by saying no more than that though funeral homes are not permitted, they are not expressly prohibited. This, the Board asserted, demonstrated that the governing body did not intend their exclusion. We fail to see any basis for this conclusion. The fact that there was an existing funeral home at the time the ordinance was adopted, yet that use was omitted, could not be any more expressive of a determination that one was enough than an express statement to that effect.
The Board's conclusion lacks the "clear and specific" findings required by the Supreme Court for the Medici prong of the negative criteria. The Board does not reconcile the fact that, when the last zoning plan was implemented, the governing body left out funeral homes as a permitted use even though one already existed in the area. In addition, the Board does not refer to a change in the neighborhood or the neighborhood's needs that would justify another funeral home where, perhaps, at the time the zoning plan was passed such circumstances did not exist. Rather, the finding that Medici had been satisfied is nothing more than a conclusory statement without any support in the record and is, therefore, arbitrary, capricious and unreasonable.

IV.
We briefly comment on defendants' contention that plaintiff lacks standing to challenge the variance. The fact is, the Board itself found plaintiff to have sufficient standing to participate in the proceedings before it. We see no basis, then, for asserting a different position in the subsequent judicial proceedings. Moreover, as a citizen and taxpayer of Oradell and operating, as well, a competing business within a mile of the site, we would think plaintiff met the broad definition of "interested party" in N.J.S.A. 40:55D-4. And see Booth v. Board of Adjustment of Rockaway, 50 N.J. 302, 305, 234 A.2d 681 (1967) (any citizen or taxpayer of township had standing to challenge the municipal action because that action had a "potential impact on the integrity of the zoning plan...."); Aurentz v. Planning Bd. of Twp. of Little Egg Harbor, 171 N.J.Super. 135, 143-44, 408 A.2d 140 (Law Div.1979) ("[p]laintiffs, as residents and taxpayers, may be concerned with the overall zoning scheme and comprehensive plan of the township. It is too narrow an interpretation to hold that an `interested party' is only one whose property value or property use is directly affected by the application."); Rose v. Chaikin, 187 N.J.Super. 210, 221, 453 A.2d 1378 (Ch.Div.1982) ("to be deemed interested parties [under the MLUL] plaintiffs need only have shown that their property rights have been `denied, violated or infringed.'"). Compare, Car Spa., Inc. v. High Tech of S & C, Inc., 267 N.J.Super. 422, 423, 631 A.2d 992 (App.Div.1993), certif. denied, 135 N.J. 304, 639 A.2d 303 (1994) (finding a non-resident competitor without standing to challenge approval of variances); Paramus Multiplex Corp. v. Hartz Mountain Ind., Inc., 236 N.J.Super. 104, 107-11, 564 A.2d 146 (Law Div.1989) (competitor whose operation was located some six to eight miles from the subject site and in a different municipality was not an "interested party").

V.
Accordingly, we affirm the trial court's reversal of the Board's grant of a use variance.
NOTES
[1] Medici v. BPR Co., 107 N.J. 1, 526 A.2d 109 (1987)
[2] We assume this proposed parking use of the residential part of lot seven would be nonconforming, as was the proposed funeral home use for the B-2 zone remainder of lot seven. Had the funeral home use been permitted and the parking the only non-permitted use at issue, the applicant's task would have been much easier. See O'Donnell v. Koch, 197 N.J.Super. 134, 141, 484 A.2d 334 (App.Div.1984).
[3] It would seem that the holding in Sica that the Medici enhanced proof requirement does not apply where the use is inherently beneficial has been abrogated by the Legislature. See L. 1997, c. 145, amending N.J.S.A. 40:55D-70(c) and (d).