868 A.2d 1114

RICKY PULEIO, PLAINTIFF–RESPONDENT, v. NORTH
BRUNSWICK TOWNSHIP BOARD OF ADJUSTMENT,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 16, 2005—Decided March 11, 2005.

Before Judges AXELRAD, R.B. COLEMAN, and HOLSTON,
JR.

*Hoagland, Longo, Moran, Dunst & Doukas,* attorneys for appellant (*James M. Kinneally, III,* of counsel and on the brief).

*Greenbaum, Rowe, Smith & Davis,* attorneys for respondent (*Douglas K. Wolfson,* of counsel; *Steven Firkser,* on the brief).

PER CURIAM.

The novel question presented by this appeal is what standard applies under the Municipal Land Use Law to an application for a subdivision of property that had previously been granted a use variance. More particularly, does the application only require a simple majority vote of the members present under *N.J.S.A.* 40:55D-9a,[1] or is it an expansion of a nonconforming use, or a use variance which has the enhanced requirement of five affirmative votes under *N.J.S.A.* 40:55D-70(d)?

The North Brunswick Township Zoning Board of Adjustment (Board) concluded that a "d" variance was required and denied plaintiff's application because the approval was by a bare majority of the members present, four votes of the seven-member board. Following plaintiff's filing of a complaint in lieu of prerogative writs, the Law Division judge concluded that the application was not for a "d" variance because it did not fall within those items enumerated in *N.J.S.A.* 40:55D-70(d). By order of June 2, 2004, the court reversed the Board and deemed plaintiff's application approved as having the requisite affirmative vote of a majority of the quorum of the Board.

On appeal, the Board contends: (1) when property that has been granted a use variance is sought to be subdivided, a variance is necessary under *N.J.S.A.* 40:55D-70(d); (2) reduction in lot size of a property previously granted use variance relief is equivalent to expansion of a nonconforming use and requires the same level of proof; (3) the trial court's reliance on *N.J.S.A.* 40:55D-76 is

---

[1] *See N.J.S.A.* 40:55D-70(c) and -76 as to the power of the Zoning Board of Adjustment to grant a use variance and a subsequent subdivision application.

incorrect; and (4) uses granted by variance relief do not become permanent uses.

We affirm substantially for the reasons expressed by Judge Hurley in his comprehensive written opinion of June 2, 2004, which we recite in its entirety: [2]

This matter arises out of an application for a minor subdivision of property, currently improved with a two-family dwelling. Plaintiff is the owner of property known commonly as 966 Newton Street and designated as Block 168, Lot 26.01, as shown on the official tax map of the Township of North Brunswick (hereinafter the "Property"). In June of 2002, the North Brunswick Zoning Board of Adjustment (hereinafter the "Board") granted plaintiff a variance pursuant to the provisions of *N.J.S.A.* 40:55D–70(d) that permitted Plaintiff to build a two-family residence on the Property. The Property is located within the R–3, single-family residential zone. Single-family residential dwellings are a principal permitted use within the zone. The lots as proposed do not conform to the bulk requirements of the zone. Plaintiff's property is 15,246 square feet in area. Plaintiff seeks to create two lots: a 7,241.85 square feet lot with the two-family dwelling and an 8,004.15 square feet lot with a proposed single-family dwelling.

The zoning officer informed Plaintiff that the subdivision application would be an expansion of a nonconforming use and would therefore require a "d" variance. Plaintiff disagreed and contended that only a bulk variance was required. As a result, Plaintiff applied to the Board for both a "d" and "c" variance. The Board considered Plaintiff's application at hearings on August 19, 2003 and September 16, 2003. His application received a 4–3 vote in favor of granting the subdivision. However, the Board denied the application, emphasizing that five affirmative votes were necessary

---

[2] We have deleted that portion of Judge Hurley's opinion pertaining to the Board's obligation to refund plaintiff excess fees as that issue was not challenged by the Board on appeal. We have also made some technical modifications to the form of some of the citations in the trial court's opinion.

pursuant to the statute.[1] The three dissenting Board members asserted the subdivision would create a use that was too intense for the Property, and would therefore have a negative impact on the neighborhood. Plaintiff's position is that this standard was not appropriate because the application was not for an expansion of a nonconforming use, but rather it was for a permitted use pursuant to the grant of the use variance. Plaintiff now moves for summary judgment seeking a determination that his application is deemed approved because he received the required majority of votes for a "c" variance and because a "d" variance was not necessary.

Plaintiff contends that the zoning officer's determination that a "d" variance was required was in error because the two-family house became a conforming and permitted use once the variance was granted. According to Plaintiff, the subdivision only required a "c" variance and four affirmative votes from the seven-member board. Plaintiff submits that he demonstrated his proposed subdivision was consistent with similar sized lots in the neighborhood and was consistent with the neighborhood's pattern of development, contrary to the dissenting board member's findings. In fact, he designed the proposed single-family house to conform with the neighboring properties to alleviate any adverse impact to the zone plan.

While it is true that generally a subdivision of a lot with a nonconforming use is considered to be an expansion of a nonconforming use and a "d" variance is required, plaintiff submits that a use permitted by a variance is vastly different from a nonconforming use. Plaintiff contends that pursuant to *Industrial Lessors, Inc. v. City of Garfield,* 119 *N.J.Super.* 181, 183, 290 A.2d 737 (App.Div.1972), a variance is a quasi-legislative determination that the use or structure allowed is not offensive; in essence, the use or structure allowed becomes a conforming use. Therefore, Plain-

---

[1] *N.J.S.A.* 40:55D–70(d).

tiff submits that the two-family dwelling became a conforming, permitted use.

Defendant Board contends that Plaintiff's assertion that "once a use variance is granted the use becomes conforming" is contrary to the Municipal Land Use Law (MLUL). *N.J.S.A.* 40:55D–7 states that a variance is permission to depart from the literal requirements of a zoning ordinance; it does not say that the use becomes conforming. According to Defendant, the granting of a use variance therefore creates a situation similar to a preexisting nonconforming use. Regardless of how the nonconforming use came into existence, the Board's interest remains the same.

When Plaintiff came to the Board seeking a variance for the two-family dwelling, the Board considered the facts presented as they were at the time. Defendant contends that we cannot speculate on what action the Board may have taken if Plaintiff had originally proposed a smaller lot for the two-family dwelling, as he is doing now. The Board may not have approved the variance if the two-family dwelling was to be built on the smaller piece of property. The subdivision Plaintiff seeks will make the lot on which the two-family dwelling exists less than half the size of the lot on which it was approved. The Board has a continued interest in whether a site remains particularly suited once a use variance has been granted. Further, Defendant submits that whether or not this application is considered an expansion of a nonconforming use or a use variance, the proofs required are the same and Plaintiff's motion should be denied.

The Board originally granted plaintiff a "d(1)" variance to build a two-family dwelling on his lot that was zoned for single-family dwellings. A year later, Plaintiff made another application to the Board, seeking a minor subdivision. The application deviated from the bulk requirements of the zone. Plaintiff sought to create two lots that would be smaller than the lot on which the two-family dwelling exists and to create an undersized lot on which the single family home is to be built. Pursuant to the advice of the zoning officer, Plaintiff applied for a "c" variance for the lot on which he

sought to build a new single-family home, and a "d" variance for the lot on which there already exists a two-family home. The zoning officer determined this to be a "d(2)" expansion of a nonconforming use because of the intensification of the use on the property.

*N.J.S.A.* 40:55D–70(d) states, in pertinent part, that the Board of Adjustment shall have the power "in particular cases and for special reasons" to grant a variance to permit

> (1) a use or principal structure in a district restricted against such use or principal structure, (2) an expansion of a nonconforming use (3) deviation from a specification or standard pursuant to section 54 of P.L.1975, c. 291 (C.40:55D–67) pertaining solely to a conditional use, (4) an increase in the permitted floor area ratio as defined in section 3.1 of P.L.1975, c. 291 (C.40:55D–4), (5) an increase in the permitted density as defined in section 3.1 of P.L.1975, c. 291 (40:55D–4), except as applied to the required lot area for a lot or lots for detached one or two dwelling unit buildings, which lot or lots are either an isolated undersized lot or lots resulting from a minor subdivision, or (6) a height of a principal structure which exceeds by 10 feet or 10% the maximum height permitted in the district for a principal structure. A variance under this subsection shall be granted only by affirmative vote of at least five members, in the case of a municipal board, or two-thirds of the full authorized membership, in the case of a regional board.
>
> [*N.J.S.A.* 40:55D–70(d).]

Therefore the Board's jurisdiction to grant a "d" variance is limited to the situations listed in subsection (d). If the deviation sought is not one of those listed then the deviation would not require a "d" variance.

The first issue is whether Plaintiff's application falls within one of the categories of subsection (d). If it does, five affirmative voices are required. Clearly subsections (d),(1),(3), (4), and (6) are not applicable. Additionally, it is not disputed that subsection (d)(5) does not apply to detached one and two dwelling buildings resulting from a minor subdivision, which is the application before the Board.[2] The issue then becomes whether Plaintiff's use should be considered an expansion of a nonconforming use, as the Board contends.

---

[2] Such expansions generally apply to non-residential developments and some high intensity or multi-family residential developments.

Plaintiff asserts that a use variance is not a preexisting conforming use, but rather, a permitted use, and is therefore entitled to all the protections of any other use permitted by the ordinance. The statutory definition of nonconforming use is a "use or activity which was lawful prior to the adoption, revision or amendment of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reasons of such adoption, revision or amendment." *N.J.S.A.* 40:55D-5. The statutory definition of a variance is "permission to depart from the literal requirements of a zoning ordinance ..." *N.J.S.A.* 40:55D-7. The case law on this issue is inconclusive as applied to the facts of this case. The statutory definition of a nonconforming use does not include a use that is granted by variance. The definition of a variance does not state that a variance becomes a permitted or conforming use; rather, it just grants permission to depart from the ordinance requirements. This court does not agree with Plaintiff that once a variance is granted the use becomes "permitted" as one specifically allowed under the ordinance. However, a use permitted by variance is also not a nonconforming use.

A use granted by variance has characteristics similar to both permitted and nonconforming uses. Indeed, there is limited case law suggesting that because a board votes on a variance and determines that the use is not offensive to the broad context of the ordinance, the use, in essence, becomes a conforming use. *See Industrial Lessors, Inc. v. City of Garfield, supra,* 119 *N.J.Super.* at 183, 290 *A.*2d 737. This suggests that a variance is much like a permitted use. A variance is generally allowed because, although not in compliance, it is not offensive to the zoning ordinance. *Funeral Home Management, Inc. v. Basralian,* 319 *N.J.Super.* 200, 207, 725 *A.*2d 64 (App.Div.1999). A zoning board may grant a variance to accommodate individual situations that require relief from restrictions otherwise applicable to the zone. *Ibid.* A variance relaxes the general rule of the ordinance to alleviate conditions specific to the particular piece of property. *Moriarty v. Pozner,* 21 *N.J.* 199, 210–211, 121 *A.*2d 527 (1956). Such an accommodation balances public and private interests and is in

keeping with the principles of zoning principles. *See id.* at 211, 121 *A.*2d 527.

Nevertheless, there is also case law suggesting a variance is more like a nonconforming use. Specifically, "there exists a 'strong legislative policy favoring land use planning by ordinance rather than by variance.'" *Funeral Home Management, Inc. v. Basralian, supra,* 319 *N.J.Super.* at 207, 725 *A.*2d 64 (quoting *Elco v. R.C. Maxwell Co.,* 292 *N.J.Super.* 118, 126, 678 *A.*2d 323 (App.Div.1996)); *See Also Kohl v. Mayor and Council of Fair Lawn,* 50 *N.J.* 268, 275, 234 *A.*2d 385 (1967) (use variance should be granted "sparingly and with great caution since they tend to impair sound zoning.") This is similar to the principle that nonconforming uses "should be reduced to conformity as quickly as is compatible with justice." *Town of Belleville v. Parrillo's Inc.,* 83 *N.J.* 309, 315, 416 *A.*2d 388 (1980). A variance permits a use that avoids an "undue invasion of the right of private property by compelling conformance to an unsuitable permissible use, a burden upon the individual landowner that would be dispropor-tionate to the common need." *Moriarty v. Pozner, supra,* 21 *N.J.* at 211, 121 *A.*2d 527. Likewise, allowance of a nonconforming use derives from the principle that it is inequitable to strip a person's vested property rights retroactively. Therefore, a nonconforming use is permitted to continue so long as the use does not substan-tially change. *Bonaventure Intern., Inc. v. Borough of Spring Lake,* 350 *N.J.Super.* 420, 432, 795 *A.*2d 895 (App.Div.2002).

Although a variance has characteristics similar to both a permit-ted and a nonconforming use, a use permitted by variance is clearly distinct. Therefore a legal use may fall into one of three different and distinct categories: (1) a permitted use—one permit-ted under the zoning ordinance that is conforming in every way; (2) a use granted by variance—one not permitted by the terms of the zoning ordinance because it does not conform to the listed permitted uses in the zone, but one that the Municipality has voted upon and allowed despite its non-conformance; and (3) a nonconforming use—one that was legal and permitted prior to an

ordinance change, but that no longer conforms with the current zoning ordinance.

The Board originally granted Plaintiff a variance to build a two-family dwelling, but because Plaintiff's use is not "nonconforming," a "d" variance is not applicable to this subdivision. "[I]f an application [for] development requests one or more variances but not a variance for a purpose enumerated in subsection d. of this section, the decision on the requested variance or variances shall be rendered under subsection c. of this section." *N.J.S.A.* 40:55D–70(d). Generally application for a "c" variance and a "d" variance cannot coexist. If the application is for a use not permitted in the zone, the bulk regulations designed for that zone cannot be applicable to the intended use. For example, an application for a gasoline service station in a residential zone should not be held to the bulk requirements of the residential zone. Lot area requirements and front and side yard setbacks for a residence were not contemplated to be made applicable to a service station. A Zoning Board, in considering a "use" variance, must then consider the overall site design. In essence, the "c" variances are subsumed in the "d" variance.

Defendant, however, contends that it is quite possible the Board would not have approved Plaintiff's application for a use variance had the application been made with a 7,000 square feet lot as opposed to a 15,000 square feet lot. The MLUL contemplates such a situation. Pursuant to *N.J.S.A.* 40:55D–76, Plaintiff is required to go back to the same board that granted the original variance, and Plaintiff is required to satisfy the "negative criteria," that is, that the application will not substantially impair the intent and purpose of the zone plan and will not be a substantial detriment to the general welfare.

The developer may elect to submit a separate application requesting approval of the variance and a subsequent application for any required approval of a subdivision, site plan or conditional use. The separate approval of the variance shall be conditioned upon the grant of all required subsequent approvals by the Board of Adjustment. No such subsequent approval shall be granted unless such approval can be granted without substantial detriment to the public good and without substantial impairment of the intent and purpose of the zone plan and zoning

ordinance ... and the special vote pursuant to subsection d ... shall not be required.

[*N.J.S.A.* 40:55D–76.]

The statute does not contain any time constraints limiting the time within which the subsequent application need be filed. It is clear however that the Board is to retain jurisdiction over the subsequent application. The statute is also silent as to whether the subsequent application may contain requests for bulk variances. The language is limited to subdivision, site plan or conditional use. An application for a subdivision or a site plan that includes a bulk variance, pursuant to *N.J.S.A.* 40:55D–70(c), requires a showing that the relief can only be granted if there would be no "substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." A review of a "subsequent application," pursuant to *N.J.S.A.* 40:55D–76, requires the same level of proof. Such relief may be granted upon a vote of a majority of the quorum present at the meeting.

On its face, *N.J.S.A.* 40:55D–76 appears to apply to bifurcated applications. In such an instance, an applicant may elect to submit a separate application requesting approval of the "d" variance and a subsequent application for approval of a subdivision or site plan. Pursuant to the statute, the separate approval of the "d" variance will be conditioned on the grant of all required subsequent approvals. The precise situation we have here is novel. Although plaintiff did not expressly bifurcate his application, Plaintiff's application essentially amounts to a bifurcated application. Plaintiff submitted an application for a "d" variance, and a year later submitted a subdivision application. To avoid a situation in which an applicant may circumvent the statutory standards, *N.J.S.A.* 40:55D–76 must apply not only to an application that is actually applied for in bifurcated form, but also to an application that is submitted in two separate steps so that for all intents and purposes, it is bifurcated as well.

In such a situation, the same board that voted on the original use shall then vote on an applicant's "subsequent application."

The number of votes required, pursuant to *N.J.S.A.* 40:55D–76, is the number of votes required to grant any such subsequent approval. If the board deems the new lots contrary to the spirit of the ordinance, the board may vote against the subdivision. While an applicant need not obtain the supermajority of five votes in favor, an applicant still must obtain affirmative votes from a majority of the board's quorum.

In the case at bar, a subdivision would normally require a majority of the Board members to vote in favor of the application. While Plaintiff received three "no" votes, Plaintiff also received four "yes" votes. Apparently the four Board members who voted "yes" did not have a problem with the size or intensity of the use on the proposed lots.

The Plaintiff's application was not a new "d" variance application since it did not fall within the situations enumerated in the statute. Whether the application is one for a "c" variance or a "subsequent application" pursuant to *N.J.S.A.* 40:55D–76, Plaintiff had to prove that the relief would not be a "substantial detriment to the public good"[3] and would not substantially impair "the intent and purpose of the zone plan and zoning ordinance";[4] in either event, only a majority of the quorum of the Board is required. Plaintiff received four affirmative votes, which is a majority of the Board. Plaintiff's application is therefore deemed approved. Plaintiff's motion for summary judgment is granted.

Affirmed.

[3] *N.J.S.A.* 40:55D–76(b).

[4] *Ibid.*