**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1744-18T4

HIGHVIEW HOMES, LLC,

     Plaintiff-Appellant,

v.

PARAMUS ZONING BOARD
OF ADJUSTMENT,

     Defendant-Respondent.

_____

Argued November 14, 2019 – Decided November 21, 2019

Before Judges Haas and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1609-18.

Stuart D. Liebman argued the cause for appellant (Wells, Jaworski & Liebman, LLP, attorneys (Stuart D. Liebman, of counsel and on the brief; Kathryn L. Walsh, and Spencer J. Rothwell, on the brief).

Daniel R. Lagana argued the cause for respondent (DeCotiis, FitzPatrick, Cole & Giblin, LLP, attorneys; Daniel R. Lagana, of counsel and on the brief; Kenneth A. Porro, on the brief).

PER CURIAM

Plaintiff Highview Homes, LLC appeals from the Law Division's November 16, 2018 order affirming the decision of defendant Paramus Zoning Board of Adjustment (the Board) to deny plaintiff's application for the use variances needed to construct a multi-family development in a single-family residential zone. Plaintiff alleges that the trial judge erred by considering the minutes of a work session meeting conducted by the Borough Mayor and Council (collectively referred to as the Borough) in rendering her decision, and that the decision was not supported by the record and the governing law. After reviewing the record in light of the contentions advanced on appeal, we conclude that plaintiff's arguments are without merit, and we affirm substantially for the reasons set forth in the judge's comprehensive written decision rendered on November 16, 2018.

The parties are fully familiar with the underlying procedural history and facts of this case and, therefore, only a brief summary is necessary here. Plaintiff is the contract purchaser of a property that it proposed to develop for multi-family housing. The property[1] was located in the Borough's R-100 Zone,

_____

[1] The property consists of 1.8 acres in total land area and approximately forty percent of it is comprised of wetlands.

2

which permits single family residences and prohibits multi-family dwellings of the type included in plaintiff's proposal.

On December 6, 2016, plaintiff filed an application seeking Preliminary and Final Site Plan Approval, use variances, bulk variances, and design waivers to construct a four-story, forty-five unit structure with parking and associated amenities.[2]  Plaintiff also promised to include four affordable housing units in the development.

That same day, the Borough adopted Ordinance 16-08, which completely overhauled its existing zoning and land development regulations.  Plaintiff's property remained in the R-100 zone, which continued to prohibit multi-family housing like the project advanced by plaintiff.

The Board conducted a four-day hearing on plaintiff's application on non-consecutive dates between March 23, and December 7, 2017.  During the course of the hearing, plaintiff presented the testimony of its project engineer, an architect, a traffic engineer, and the project planner.  All of plaintiff's witnesses asserted that the property would be able to accommodate the project if the requested variances were granted.

---

[2]  Plaintiff also sought permission to demolish three single-family houses that were on the property.

3

Over the course of the hearings, plaintiff modified its application by, among other things, reducing overall size of the building and cutting the number of units from forty-five to thirty-five. Three of these units would be reserved for affordable housing.

With regard to the two main issues raised by plaintiff on appeal, plaintiff's planner testified that the Borough should have placed the property in the new Highway Commercial Corridor Zone (HCC-2 zone), instead of continuing to include it in the R-100 zone. The planner testified the project would meet the criteria established for construction in the HCC-2 zone, and plaintiff only needed to seek variances because the property was still in the R-100 zone.

In response, one of the Board members asked the Board's engineer if he knew anything about "why this site is currently in the residential single family zone as opposed to what [plaintiff's planner] thinks is a more appropriate zone." After he was sworn as a witness, the engineer stated that "[i]n early versions of the development of the plan, when we were developing the limits of the HCC zone and then subsequently added the HCC-2 zone, in the earlier versions, [the engineer] had [plaintiff's property] in the HCC-2 zone[.]" However, the engineer explained that while he "placed it there[,]" he was later "instructed to

4

remove it and keep it in the R-100 zone."[3] The engineer stated he complied with this direction.

Moving to the second issue, plaintiff's planner also testified plaintiff was proposing to include three affordable units in the thirty-five unit project. The planner believed this was important because the Borough had recently enacted Ordinance 16-09, which provided inclusionary zoning parameters and compensating incentives to developers who would help the Borough meet its affordable housing obligations. Therefore, the planner opined that plaintiff's application should be approved.

Following the completion of the hearing, the Board voted unanimously to deny plaintiff's application. In its memorializing resolution, the Board concluded that plaintiff failed to satisfy the positive criteria embodied in N.J.S.A. 40:55D-70(d) and, therefore, it did not need to examine the negative criteria set forth in that statute. Specifically, the Board found that plaintiff's application, even as modified, would result in "a substantial overdevelopment of the site," with undersized outdoor recreational areas, and plan issues with

---

[3] Specifically, the engineer stated he was "not quite sure which meeting it was, but between – I didn't attend all the meetings of the mayor and council and the planning board – iterations, I was instructed to remove it and keep it in the R-100 zone."

regard to emergency and waste removal truck access, as well as snow removal difficulties.

The Board rejected plaintiff's claim that the Borough included the property in the R-100 zone "by mistake," and found that the decision to continue to place the site in the single-family residential zone was a deliberate one. Relying on the Board engineer's testimony, the Board stated that the engineer "had originally considered placing the property in the HCC Zoning District, but . . . the Mayor and Council had reviewed the suggestion and removed the property from any consideration for rezoning, specifically electing to continue the R-100 designation."

The Board was also not impressed with plaintiff's promise to include three affordable housing units in its project. While the Board "recognize[d] that the creation of affordable housing within the Borough is necessary, . . . building [three] affordable housing units in a town that experts have indicated will require hundreds, if not thousands, of additional units does not mandate a finding that the proposed use is inherently beneficial."

Plaintiff thereafter filed a complaint in the Law Division seeking to reverse the Board's action. After thoroughly canvassing the record and accurately applying the legal principles governing the action in lieu of

prerogative writs, the judge dismissed plaintiff's complaint, holding that the Board's findings and conclusions were supported by the evidence and were not arbitrary, capricious, or unreasonable. This appeal followed.

On appeal, plaintiff raises the same arguments it unsuccessfully pressed before the trial judge. Plaintiff asserts that the judge erred by reviewing the minutes of a Borough meeting in concluding that the Borough did not continue to include plaintiff's property in the R-100 zone by mistake. Plaintiff also argues that the judge mistakenly found that it failed to meet the positive criteria, primarily by giving short shrift to its promise to include three affordable housing units in its project. We disagree.

"[W]hen reviewing the decision of a trial court that has reviewed municipal action, we are bound by the same standards as was the trial court." Fallone Props., L.L.C. v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004). Thus, our review of the Board's action is limited. See Bressman v. Gash, 131 N.J. 517, 529 (1993) (holding that appellate courts are bound by the same scope of review as the Law Division and should defer to the local land-use agency's broad discretion).

It is well-established that "a decision of a zoning board may be set aside only when it is 'arbitrary, capricious or unreasonable.'" Cell S. of N.J., Inc. v.

Zoning Bd. of Adjustment of W. Windsor, 172 N.J. 75, 81 (2002) (quoting Medici v. BPR Co., 107 N.J. 1, 15 (1987)). "[P]ublic bodies, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their delegated discretion." Jock v. Zoning Bd. of Adjustment of Wall, 184 N.J. 562, 597 (2005). Therefore, "[t]he proper scope of judicial review is not to suggest a decision that may be better than the one made by the board, but to determine whether the board could reasonably have reached its decision on the record." Ibid.

Furthermore, it is uniformly recognized that use variances should be granted sparingly and with great caution. Kinderkamack Rd. Assocs. v. Mayor of Oradell, 421 N.J. Super. 8, 21 (App. Div. 2011) (citing N.Y. SMSA, L.P. v. Bd. of Adjustment of Weehawken, 370 N.J. Super. 319, 331 (App. Div. 2004)). "Because of the legislative preference for municipal land use planning by ordinance rather than variance, use variances may be granted only in exceptional circumstances." Id. at 12. Accordingly, our courts give "greater deference to variance denials than to grants of variances, since variances tend to impair sound zoning." Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment, 343 N.J. Super. 177, 199 (App. Div. 2001).

A-1744-18T4

To obtain a use variance, an applicant must satisfy both the so-called positive and negative criteria of N.J.S.A. 40:55D-70(d). See New Brunswick Cellular Tel. Co. v. Borough of S. Plainfield Bd. of Adjustment, 160 N.J. 1, 6 (1999). Under the positive criteria, an applicant must show special reasons meriting a use variance. N.J.S.A. 40:55D-70(d)(1). As the New Jersey Supreme Court has stated, "'special reasons' takes its definition and meaning from the general purposes of the zoning laws" enumerated in N.J.S.A. 40:55D-2. Burbridge v. Twp. of Mine Hill, 117 N.J. 376, 386 (1990). There are three circumstances in which such special reasons

> may be found (1) where the proposed use inherently serves the public good, such as a school, hospital or public housing facility, see Sica v. Bd. of Adjustment of Wall, 127 N.J. 152, 159-60, (1992); (2) where the property owner would suffer "undue hardship" if compelled to use the property in conformity with the permitted uses in the zone, see [Medici, 107 N.J. at 17 n.9]; and (3) where the use would serve the general welfare because "the proposed site is particularly suitable for the proposed use." [Smart SMR v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 323 (1998)] (quoting Medici, 107 N.J. at 4).
>
> [Nuckel v. Borough of Little Ferry Planning Bd., 208 N.J. 95, 102 (2011) (quoting Saddle Brook Realty, L.L.C. v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J. Super. 67, 76 (App. Div. 2006)).]

A-1744-18T4

The negative criteria require an applicant to prove that the variance "can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70(d).

A proponent of a non-inherently beneficial commercial use, as here, must surmount an additional threshold. Since 1987, such an applicant is obliged to satisfy "an enhanced quality of proof" by securing "clear and specific findings by the board of adjustment that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." Medici, 107 N.J. at 21. Thus, an applicant must reconcile the proposed use variance with the fact that the zoning ordinance omitted the use from those permitted in the district. Id. at 21-23. It is a formidable obstacle for any applicant.

Particular suitability for a use variance can be shown where (1) "the use is one that would fill a need in the general community," (2) "there is no other viable location," or (3) "the property itself is particularly well fitted for the use either in terms of its location, topography or shape." Funeral Home Mgmt., Inc. v. Basralian, 319 N.J. Super. 200, 210 (App. Div. 1999). This burden may also be satisfied, for example, by evidence that "the character of a community has changed substantially since the adoption of the master plan" or that "a variance

for a use omitted from the ordinance is not incompatible with the intent and purpose of the governing body when the ordinance was passed." Medici, 107 N.J. at 21.

Applying these criteria, we discern no basis for disturbing the judge's decision. In light of the stringent Medici standards, the Board's reasons for denying plaintiff's application find ample support in the record. Contrary to plaintiff's contentions, nothing that it presented at the four-day hearing remotely demonstrated that (1) the construction of a multi-family development in a single-family residential zone would fill an unmet need in the general community; (2) there was no other viable location for such use; or (3) the land's topography, location, or shape were well fitted for such uses. Regardless of whether the project could be compatible with its single-family residential setting, or even profitable to the community or its owner, plaintiff failed to demonstrate that "the particular site . . . must be the location for the variance." Funeral Home Mgmt., 319 N.J. Super. at 209 (alteration in original) (quoting Fobe Assocs. v. Mayor of Demarest, 74 N.J. 519 (1977)).

Plaintiff argues that the judge erred by considering the minutes of a Borough meeting that confirmed the Board engineer's testimony that he originally placed the property in the new HCC-2 zone, but then returned it to the

11

R-100 zone after being instructed to do so at a Borough meeting.  These minutes were not part of the record submitted to the Board during the four-day hearing, and were incorrectly included in the appendix of the brief the Board filed with the judge in the Law Division action.[4]  Thus, plaintiff is correct that the judge should not have considered them.

However, any error in considering the minutes was clearly harmless because it was not "clearly capable of producing an unjust result[.]"  R. 2:10-2. As previously noted, the Board engineer testified at the hearing that he moved the property to the HCC-2 zone, but then returned it to the R-100 zone after receiving instructions to do so at a Board meeting.  By itself, this testimony was competent proof that the continuance of the property's zoning status was not inadvertent.  Thus, the Borough meeting minutes, which merely corroborated the engineer's testimony, did not improperly tip the scales against plaintiff on this point.

We also disagree with plaintiff's contention that its proposal to include three affordable housing units in its thirty-five unit project excused it from

---

[4]  The minutes of the Borough's July 27, 2016 work session meeting state that the Board's engineer stated that "Sorbello Road properties [where plaintiff's property is located] are [R-100] properties and Council discussed that there would be no reason to change them on the zoning map."

satisfying the enhanced <u>Medici</u> burden of proof. To be sure, a project comprised solely of "[a]ffordable housing is an inherently beneficial use." <u>Homes of Hope, Inc. v. Easthampton Twp. Land Use Planning Bd.</u>, 409 N.J. Super. 330, 336 (App. Div. 2009) (citations omitted). However, that is certainly not the case here where plaintiff proposed including only three affordable units, a mere 8.5% of the total units it planned to build, in its project.

Our decision in <u>Advance at Branchburg II, LLC v. Branchburg Twp. Bd. of Adjustment (Branchburg)</u>, 433 N.J. Super. 247 (App. Div. 2013), is instructive on this point. In <u>Branchburg</u>, the developer of a proposed multi-unit residential development argued that making approximately 20% of the units "affordable" rendered the entire development an inherently beneficial use. <u>Id.</u> at 251. We held that "although a project including only affordable units may be inherently beneficial, the addition of affordable units to a proposed development in which most of the proposed units are market-rate housing does not make the entire project inherently beneficial." <u>Id.</u> at 256. We recognized, as plaintiff argues here, that "[a] developer's ability to build market-rate units undoubtedly facilitates its building of affordable housing financially, and the mixture of affordable and market-rate housing may well provide benefits to the residents of both." <u>Id.</u> at 258. However, we saw "no basis under our current statutory or

decisional law to hold that the inclusion . . . of a much larger residential development transforms the entire project into an inherently beneficial use for purposes of obtaining a . . . variance[.]" Ibid.

As in Branchburg, we are satisfied that plaintiff's project, over 90% of which is not devoted to affordable housing, is not an inherently beneficial use under 40:55D-70(d), and does not excuse plaintiff from meeting the stringent Medici standard. Therefore, we reject plaintiff's argument on this point.

In sum, we conclude that the judge properly held that plaintiff failed to sustain the requisite burden of proof before the Board. The remainder of plaintiff's arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION