**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2509-21

THE ALLIANCE FOR
SUSTAINABLE COMMUNITIES
MERCER-MONMOUTH, MARY
FAHY WOEHR, and SUSAN
MATSON,

      Plaintiffs-Appellants,

v.

ROBBINSVILLE TOWNSHIP
ZONING BOARD, and
JOHNSON DEVELOPMENT
ASSOCIATES, INC.,

      Defendants-Respondents.

_____

Argued November 27, 2023 – Decided July 25, 2024

Before Judges Gilson, DeAlmeida and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1249-21.

Peter D. Dickson argued the cause for appellants.

Michael W. Herbert argued the cause for respondent Robbinsville Township Zoning Board (Parker McCay, PA, attorneys; Michael W. Herbert, of counsel and on the brief; Alena Hyatt, on the brief).

Guliet D. Hirsch argued the cause for respondent Johnson Development Associates, Inc. (Archer & Greiner, PC, attorneys; Robert W. Bucknam, Jr., of counsel and on the brief; Guliet D. Hirsch, on the brief).

PER CURIAM

Plaintiffs appeal from a March 17, 2022 order of the Law Division dismissing with prejudice their complaint in lieu of prerogative writs challenging defendant Robbinsville Township Zoning Board's (Board) approval of defendant Johnson Development Associates, Inc.'s (JDA) variance application for the development of two warehouses. We affirm.

I.

In 2008, the Robbinsville Planning Board approved a project known as Mercer Corporate Park on a parcel on Robbinsville-Allentown Road (the property), which was projected to include 508,700 square feet of office space, 84,180 square feet of warehouse space, and a 160-room hotel. The property is in the township's Office, Research, and Hotel (ORH) zone in close proximity to I-195 and the New Jersey Turnpike. Allentown is a nearby municipality.

A-2509-21

Of the approved structures, only one 61,500-square-foot office building was built at Mercer Corporate Park. Although most of the proposed structures were not constructed, the property was developed with a loop road, parking lot, and two primary stormwater management basins that were intended to support the approved project. The remainder of the property is undeveloped and contains natural areas, including portions of a stream along the eastern side of the property.

On January 24, 2020, JDA submitted a request to the Board for variances to permit the construction of two light-industrial warehouse/distribution/office facilities on an unimproved portion of the property while retaining the existing office building. The larger warehouse would consist of a 333,580-square-foot building with 277 car parking spaces, sixty-nine loading berths, and forty trailer parking spaces. The smaller warehouse would consist of a 167,482-square-foot building with 135 car parking spaces, thirty loading berths, and twenty-five trailer parking spaces.

JDA applied for a use variance from Robbinsville Ordinance Section 142-24, which permits "[f]lex space or office/service center involving at least 50% of the total floor area as office, with the remaining floor area as warehouse." Robbinsville, N.J., Code § 142-24.B(9). JDA's proposed light-industrial

warehouse/distribution/office facilities exceed the percentage of warehouse space permitted in the ordinance. In addition, JDA sought temporary variance relief to permit more than one structure per lot until its intended application for a subdivision is approved.

JDA also applied for bulk variance relief, which was subsumed with the use variance request, for three aspects of the development: (1) to decrease the width of loading berths from fourteen-feet wide to thirteen-and-a-half-feet wide; (2) to increase the maximum allowed parking spaces that may be located in the front yards of warehouses from two percent to an aggregate of 24.2 percent for car parking spaces and 41.5 percent for trailer parking spaces; and (3) to permit one building to not have footage along an approved public right-of-way.

As allowed by N.J.S.A. 40:55D-76, JDA elected to bifurcate its approval process so that the subdivision issue, as well as other issues, including stormwater management, could be reserved for final site plan approval after the approval of the variances.

ARH Associates (ARH) is the Board's appointed planner and engineer. ARH employee Stuart Wiser is the planner and ARH employee Kathryn Cornforth is the engineer. Wiser and Cornforth helped the Board review JDA's submission and provided feedback, resulting in several revisions. On June 18,

2020, ARH staff, Board staff, and Lance Landgraf, JDA's planning consultant and project planner, participated in a Technical Review Committee meeting concerning the application.

On June 26, 2020, ARH wrote a letter to the Board, disclosing that it is the appointed engineer for the Casino Reinvestment Development Authority (CRDA), where Landgraf is the Director of Planning and Development. ARH is responsible for engineering review of land use applications before CRDA. The letter disclosed that with respect to its CDRA work, Landgraf "oversees ARH's activities and (presumably) approves our invoicing . . . ." It explained that ARH discovered Landgraf's participation in JDA's application for the first time at the June 18, 2020 meeting. It ceased working on JDA's application at that point to make its disclosure of its relationship with Landgraf.

ARH's letter specified that between the beginning of the application process in January 2020, and the June 18, 2020 meeting, its duties included the issuance of a review letter, participation in an earlier meeting "with [JDA], several of its professionals and Township staff and Professionals," the receipt of additional materials from JDA prompted by that meeting, and the issuance of a second review letter. ARH also stated that no ARH employee "assigned to Robbinsville has any role with respect to any CRDA project" and that it

"believe[s] that we can continue to be fair and unbiased in representing the interests of the Zoning Board and the Township and its taxpayers in this matter." ARH also stated that it believed its "recusal at this point would result in delay and additional cost to" JDA.

The Board attorney, Michael Herbert, evaluated ARH's letter on behalf of the Board and replied to ARH later that day. He stated that "we have reviewed this issue and believe that any perceived conflict in this matter to be too remote to disqualify your firm." He added, "[w]e are comfortable moving forward with all professionals in this matter." The Board was notified of Herbert's letter prior to the hearing on JDA's application.

After issuing the required notices, on February 23, 2021, the Board conducted a five-hour virtual public hearing to evaluate JDA's application.

At the hearing, JDA's attorney noted that the initial approvals for Mercer Corporate Park anticipated far more intense usage of the property, particularly in terms of traffic, as an office park would produce more traffic than a warehouse and distribution facility. He argued that declining demand for office space has "reduced the utility of the property under the current zoning" and that JDA's proposal represents "a superior development alternative for the property." Finally, he informed the Board that the bifurcation was done at the suggestion

6 <span>A-2509-21</span>

of the Board's professionals during the review period, relying on the holding in Puleio v. North Brunswick Township Board of Adjustment, 375 N.J. Super. 613 (App. Div. 2005).

Tripp Bailey, the Regional Director of JDA's Industrial Division, testified that "demand for warehouse distribution facilities similar to what we're proposing has gone up significantly in recent years." He also added that there would be increased interest in this particular site because of the "immediate access [the property] has to I-195 and then to the New Jersey Turnpike." Bailey testified that the site was suitable for development because it had existing infrastructure, such as stormwater management facilities and a loop road. Bailey stated that JDA had agreed to build a roundabout near the exit from the property that would allow trucks that made a left turn from the facility, despite measures to prevent such turns, to turn around and access I-195 without going through Allentown.

The Board accepted Kevin Webb, a Vice President of Langan Engineering, as an expert. Webb testified that the Department of Environmental Protection (DEP) would have to approve the site's stormwater management plan as part of the final site approval. He characterized the stormwater management proposals in JDA's application as "preliminary work," and stated that new DEP

stormwater regulations were coming into effect, which could prompt JDA to make "some supplements" to its stormwater management plan before seeking final site plan approval. Webb stated that JDA believes it has "a plan that is safely compliant with . . . the current rules and the rules that will be enacted in March of this year."

Daniel Disario, the Director of Traffic Engineering Studies for Langan Engineering, who the Board accepted as an expert, testified that he prepared a traffic impact study that indicated that "warehouse development from a traffic perspective is certainly a more beneficial land use than what would otherwise be allowed by zoning or what was contemplated with the prior approval." Disario testified that the previously contemplated use of the property would have resulted in 615 morning peak hours vehicle trips and 670 evening peak hours vehicle trips in and out of the property. Under JDA's proposal, the traffic study indicated there would be 200 morning peak trips and 200 evening peak trips. He also noted that the number of parking spaces on the property would be reduced from 2,200 spaces to 700 spaces.

Disario explained traffic calming measures, describing JDA's proposal to use physical infrastructure and signage to prevent trucks from turning left as they leave the facility. He also discussed the proposed roundabout to encourage

trucks to bypass Allentown. Disario testified that the roundabout was suggested as a potential traffic improvement in a joint government report issued by Mercer and Monmouth Counties, Allentown, Robbinsville, and Upper Freehold called "Moving Mindfully, Monmouth and Mercer" published September 23, 2019 (Moving Mindfully). Disario testified that the design of the warehouse buildings, which only feature truck loading docks on one side of the buildings, would attract less-intensive warehousing operations for tenants, having a salutary effect on overall truck volume.

Landgraf also testified as an expert. He testified that need for office use declined with an increase in remote working. Furthermore, the site's proximity to a major transportation corridor, internal access road, and frontage on a county road, as well as the positive effect of the proposed traffic improvements, made the site particularly suited to warehouse usage considering the standard for variances under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163. He also testified that the property was underutilized, and that approving the variances would give the community an economic benefit with a proposed facility that had less impervious surface coverage and larger ecological buffer areas than the previously approved project. Landgraf, responding to questioning

from a Board member, opined that the positive criteria for the requested variances were satisfied.

As for the negative criteria, Landgraf testified that there would be no "substantial detriment to the public good" because the new construction would not create "a significant impact to the surrounding properties." He cited additional buffering and landscaping provided by the project and noted that the "orientation of the buildings" would create a facility that is "focused on the internal part of the property." He opined that this application would not compromise the current zoning plan, because warehousing was already allowed, and the increase in the amount of warehouse space would be in line with the economic goals of Robbinsville's Master Plan, namely, to establish transportation corridors along the major roadways intersecting the township. Finally, Landgraf added, that in his opinion reducing the trailer berth widths from fourteen feet to thirteen and one-half feet "really is not problematic."

Wiser offered the opinion that "I certainly think this is an appropriate use for the site. And I don't think the use is a substantial detriment to the zone plan, the public good, or the Master Plan." At the conclusion of his testimony, Wiser was asked about the consequences of approving this variance using the bifurcation procedure. He replied: "If the subdivision ultimately is not

10

acceptable to the Board, then I don't think the project moves forward under the current set of approvals." Herbert stated that he agreed with Wiser.

After the witness statements, the Board opened the meeting to public comment, limiting each speaker to three minutes. Herbert stated that "if another member of the public makes an argument or statement, we ask it not be repeated" and advised that the topic of the hearing was JDA's application, and not "trucks out on 195" or "things that are going on in Allentown or Robbinsville . . . ." Eighteen members of the public testified at the hearing. They discussed, among other things: overdevelopment; the impact on adjacent wetlands and wildlife; light and noise pollution; the bifurcation process; and traffic.

At the close of the hearing, the Board unanimously approved the variance application subject to certain conditions. On April 27, 2021, the Board adopted a resolution, which included eighty-nine findings of fact and finalized the Board's approval.

With respect to the use variance, the Board found that the property was particularly suited to the proposed use due to its size, access to I-195 and the Turnpike, and existing infrastructure. In addition, the Board concluded that warehouses, as opposed to office buildings, are a more desirable use for the property. The Board also found that JDA had demonstrated special reasons for

the use variance, and the purposes of zoning would be advanced by deviation from the zone plan, which represented an improvement over existing zoning. The Board also found that the variance would not result in a substantial detriment to the public good because JDA proposed future improvements to address traffic, drainage, and parking associated with the proposed use.

The Board concluded that the bulk variances are subsumed within the requested use variance because they are known to JDA and are necessary to allow JDA to avail itself of the use variance granted by the Board. In addition, the Board determined that the purposes of the MLUL would be advanced by the bulk variances and that the benefits of the deviations from the zoning ordinance would substantially outweigh any detriment. The Board determined that there would be no substantial negative impact on the public good, including health, safety, and welfare, or on the township's Master Plan or zoning ordinances by granting the variances.

On June 11, 2021, plaintiffs filed a complaint in lieu of prerogative writs challenging the Board's decision. Plaintiff The Alliance for Sustainable Communities Mercer-Monmouth is an unincorporated citizens group comprised of residents of Allentown and nearby communities. Plaintiff Mary Fahy Woehr resides in Allentown adjacent to the property. Plaintiff Susan Matson is a

resident of Allentown who has a particular interest in environmental issues, including the wetlands and bird habitat on the property.

Plaintiffs make several arguments in support of their challenge to the Board's decision: (1) the Board provided defective notice of the hearing; (2) the approval is inconsistent with the township's Master Plan; (3) the approval is inconsistent with the township's zoning ordinance; (4) the application violates stormwater runoff regulations; (5) the Board deprived the public of an opportunity to speak; (6) the Board's environmental and historic analysis was deficient; (7) the Board relied on a deficient traffic study; (8) the Board lacked competent and credible evidence to make its factual findings; (9) JDA failed to qualify for a use variance; and (10) JDA failed to qualify for a bulk variance.

On March 17, 2022, Assignment Judge Robert T. Lougy issued a comprehensive, fifty-three-page written opinion rejecting plaintiffs' claims and dismissing the complaint with prejudice. Judge Lougy analyzed each of plaintiffs' arguments in detail, applying the relevant provisions of the MLUL and precedents interpreting that statute.

The judge rejected plaintiffs' argument that the public notices of the hearing did not fully disclose the content and impacts of JDA's application or the rights of commentors and objectors. Relying on the holding in Perlmart of

Lacey, Inc. v. Lacey Twp. Planning Bd., 295 N.J. Super. 234, 237-39 (App. Div. 1996), Judge Lougy found that the notices provided a common-sense description of the proposed development sufficient to alert residents that JDA proposed building two large warehouse facilities on the property intended to permit trucks to transport goods to and from the warehouses. The judge concluded that a layperson could reasonably discern from the notices that warehouses of that size would pose traffic, noise, and environmental concerns.

Judge Lougy also rejected plaintiffs' claim that the Board's approval of JDA's application is inconsistent with the township's Master Plan and zoning ordinance. The judge found that the Board was entitled to rely on Landgraf's expert testimony concerning the Master Plan and zoning ordinance, which was supported by the testimony of the Board's planner. The judge noted that "[w]hile [p]laintiffs may disagree with that testimony they do not point to contrary testimony that was before the Board or that the Board failed to consider." The judge found that the Board's decision on this point was supported by substantial credible evidence.

Judge Lougy found that the record, including Webb's expert testimony, establishes that JDA and the Board were aware that DEP's new stormwater requirements, once adopted, will apply to the site plan and subdivision

application for the development. The Board was entitled, the judge found, to rely on Webb's testimony that JDA will take all steps necessary to comply with the DEP's new regulations and had already undertaken preliminary measures to that end. The Board's decision regarding the development's stormwater management was, the judge found, supported by substantial credible evidence.

Judge Lougy also concluded that the Board provided sufficient opportunity for members of the public to appear and comment at the hearing. Relying on N.J.S.A. 40:55D-10(d), Village Supermarkets, Inc. v. Mayfair Supermarkets, Inc., 269 N.J. Super. 224, 238 (Law Div. 1993), and Shim v. Washington Twp. Planning Bd., 298 N.J. Super. 395, 398-400, 413 (App. Div. 1997), the judge found that the Board was authorized to manage the hearing by limiting the time allotted to speakers, not offering cross-examination of witnesses, and prohibiting duplicative and irrelevant testimony. The judge found that the order of the hearing "was unexceptional and not surprising" and included three hours of public testimony. He also concluded that the Board did not strictly apply the three-minute limit it announced for each speaker and permitted the majority of the public commentors to express their full viewpoint without interruption. The Board permitted some commenters to speak twice.

A-2509-21

The judge rejected plaintiffs' argument that interruptions of members of the public by the Board's attorney were "bogus." Instead, the judge concluded, the attorney interrupted statements on irrelevant matters, including comments that endangered species were present on the property, a factor municipalities are not authorized to consider under the MLUL.

Judge Lougy found that the Board's environmental and historical analyses and findings were supported by substantial credible evidence. That evidence included JDA's environmental impact statement, which noted that the Allentown Historic District was near the property, but not adjacent to it. The report also noted that a farm adjacent to the property might qualify for a historic designation but does not have one. Citing Medici v. BPR Co., 107 N.J. 1, 22-23 n.12 (1987), the judge noted that the Board is required to consider a development's impact on adjacent historic properties, a factor not present here.

The judge undertook an extended analysis of the Board's findings concerning the traffic expected to be generated by the development. First, the judge rejected plaintiffs' contention that the traffic impact study considered by the Board was inadmissible because the expert who discussed the report was not its author. Noting that the rules of evidence do not apply to a hearing on a variance application, Judge Lougy noted that the rules would, if applied, allow

the disputed testimony because the witness who discussed traffic impacts was qualified by the Board as an expert. As an expert, the judge noted, the witness would be permitted under the rules of evidence to rely on the report of another expert when reaching his opinion. The judge rejected plaintiffs' predictions on traffic impacts from the development as conjecture and declined to take judicial notice of a report that was not presented to the Board at the hearing.

Judge Lougy found that the Board relied on "a comprehensive collection of documents and information concerning the proposed site development" in reaching its decision. Thus, the judge rejected plaintiffs' claim that the Board relied primarily on a report by Landgraf that plaintiffs claimed contained a net opinion.

The judge also rejected plaintiffs' arguments that Landgraf had a conflict with ARH that tainted the Board's decision. Judge Lougy found that "no conflict of interest existed that would likely tempt representatives from ARH . . . to depart from their official public duties on behalf of the Board." The judge found that "ARH d[id] not have any direct or indirect financial interest that would reasonably be expected to impair its independent judgment in performing consulting services for the Board." The relationship between ARH's service to the Board and Landgraf's approval of CRDA invoices for ARH's work for that

entity are, the judge found, "the very definition of remote." Thus, the judge concluded, defendants did not violate the Local Government Ethics Law, N.J.S.A. 40A:9-22.5(d), and the Board's decision was not compromised by a conflict of interest.

Judge Lougy set forth a detailed analysis of the Board's approval of each of the variances sought by JDA and the substantial credible evidence supporting the Board's decision. The judge noted the evidence supporting the Board's determination that the property's location was particularly suited for the use JDA proposed. In addition, the judge found support in the record for the Board's determination that the proposed use will have a positive economic impact, is superior to the current use, and is consistent with the Master Plan.

The judge also found sufficient support for the Board's determination that the proposed use will not cause a substantial detriment to the public good or impair the intent or purpose of the zone plan and zoning ordinance. The judge noted that ORH zone contemplated at least a partial warehouse use, as did the previously approved development of the property. The judge also observed that the approval was subject to conditions, including approval of the proposed traffic circle by county officials, that will ameliorate impacts from the development. A March 17, 2022 order memorializes the trial court's decision.

This appeal followed. Plaintiffs argue the trial court: (1) applied the wrong legal standard when reviewing the Board's decision; (2) erroneously concluded the Board made sufficient finding of fact with respect to the positive criteria for the use variance; (3) erroneously accepted the Board's conclusion that no findings of fact were required for the positive criteria for the bulk variances; (4) erroneously accepted the Board's absence of findings of fact for the negative criteria for both the use and bulk variances; (5) erred when it failed to find that ARH and Landgraf had a conflict of interest that invalidated the Board's decision; (6) erroneously concluded that the Board was authorized to rely on a JDA's promise to comply with future stormwater management regulations; (7) erred with respect to the credibility of the evidence on which the Board relied concerning the traffic impacts; and (8) mischaracterized the harassment and curtailment of public comments at the hearing.

II.

When reviewing a planning board's decision, we use the same standard used by the trial court. Cohen v. Bd. of Adjustment, 396 N.J. Super. 608, 614-15 (App. Div. 2007). Like the trial court, our review is limited. Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998). Decisions of zoning boards are quasi-judicial actions of municipal

administrative agencies, <u>Willoughby v. Planning Bd.</u>, 306 N.J. Super. 266, 273 (App. Div. 1997), and they are presumed to be valid, <u>Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment</u>, 172 N.J. 75, 81 (2002).  The Board's decision may be set aside only if it was arbitrary, capricious, or unreasonable.  <u>Medici</u>, 107 at 15.

A planning board's actions are presumed to be valid because of its "peculiar knowledge of local conditions," which entitle such boards to wide latitude in the exercise of discretion.  <u>N.Y. SMSA, LP v. Bd. of Adjustment</u>, 370 N.J. Super. 319, 331 (App. Div. 2004) (quoting <u>Pierce Ests. Corp. v. Bridgewater Twp. Zoning Bd. of Adjustment</u>, 303 N.J. Super. 507, 514 (App. Div. 1997)).  Further, "the Board 'has the choice of accepting or rejecting the testimony of witnesses.  Where reasonably made, such choice is conclusive on appeal.'"  <u>Kramer v. Bd. of Adjustment</u>, 45 N.J. 268, 288 (1965) (quoting <u>Reinauer Realty Corp. v. Nucera</u>, 59 N.J. Super. 189, 201 (App. Div. 1960)).  "The proper scope of judicial review is not to suggest a decision that may be better than the one made by the board, but to determine whether the board could reasonably have reached its decision on the record."  <u>Jock v. Zoning Bd. of Adjustment</u>, 184 N.J. 562, 597 (2005).

The MLUL gives a board the authority to "grant a variance to allow departure from [zoning] regulations" upon a showing of "special reasons" to justify the variance. N.J.S.A. 40:55D-70(d). A use variance will not be granted "without a showing that such variance . . . can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." Ibid.[1]

When the application does not concern an inherently beneficial use, a general use variance application requires: (1) satisfying the positive criteria by showing special reasons as to why "the use promotes the general welfare because the proposed site is particularly suitable for the proposed use"; and (2) satisfying the negative criteria by proving "the variance can be granted without substantial detriment to the public good" and demonstrating "through an enhanced quality of proof . . . that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." Smart SMR, 152 N.J. at 323 (internal quotations omitted). The enhanced quality of proof on the negative criteria requires "specific findings by the board of adjustment . . . ." Medici,

---

[1] The "special reasons" requirement is commonly referred to as the "positive criteria," while the substantial detriment to the public good and zone plan impairment are the "negative criteria." Salt & Light Co. v. Willingboro Twp. Zoning Bd. of Adjustment, 423 N.J. Super. 282, 287 (App. Div. 2011).

107 N.J. at 4. Associated subsection (c) variances are subsumed in the use variance application. Puleio, 375 N.J. Super. at 621.

Determining whether a parcel is particularly suitable for the proposed use is inherently site-specific, Stop & Shop Supermarket Company v. Board of Adjustment, 162 N.J. 418, 431 (2000), and signals that "strict adherence to the established zoning requirements would be less beneficial to the general welfare." Price v. Himeji, LLC, 214 N.J 263, 287 (2013) (citing Kramer, 45 N.J. at 290-91); see also Burbridge v. Governing Body of Twp. of Mine Hill, 117 N.J. 376, 387-88 (1990) (finding aesthetic improvement to a property as a permissible special reason). As stated by the Court in Price,

> the inquiry concerning whether a proposed use variance should be granted . . . is an inherently fact-specific and site-sensitive one. Although the availability of alternative locations is relevant to the analysis, demonstrating that a property is particularly suitable for a use does not require proof that there is no other potential location for the use[,] nor does it demand evidence that the project "must" be built in a particular location. Rather, it is an inquiry into whether the property is particularly suited for the proposed purpose, in the sense that it is especially well-suited for the use, in spite of the fact that the use is not permitted in the zone. Most often, whether a proposal meets that test will depend on the adequacy of the record compiled before the zoning board and the sufficiency of the board's explanation of the reasons on which its decision to grant or deny the application for a use variance is based.

A-2509-21

[214 N.J. at 292-93.]

In addition, demonstrating that a variance can be granted without substantial detriment to the public good "focuses on the effect that granting the variance would have on the surrounding properties." Id. at 286. Showing the variance will not substantially impair the intent and purpose of the zoning scheme involves "reconcil[ing] the grant of the variance for the specific project at the designated site with the municipality's contrary determination about the permitted uses as expressed through its zoning ordinance." Ibid.

Having carefully reviewed plaintiffs' arguments in light of the record and applicable legal principles, we affirm the March 17, 2022 order for the reasons stated by Judge Lougy in his thorough and well-reasoned written opinion. We are not persuaded by plaintiffs' arguments that Judge Lougy misapplied the law or that the Board erred in how it conducted the hearing or in its decision to grant JDA's variance application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2509-21